# CHARLESTON. .

HALSTEAD v. RADER.

Submitted February 3, 1886.—Decided March 27, 1886.

1. A notice in a contested election case must set forth with reasonable certainty the facts on which the contest is founded ; and they must be such that, if sustained by proof, they will make it the duty of the court, either to vacate the election or declare that another person than the contestee was duly elected. (p. 810 )

2. A notice, which states, as the sole ground of complaint, that the county court commissioners failed and refused to count the votes at a specified precinct, which were duly and legally certified by the commissioners holding the election at said precinct, and that if said votes had been counted, the contestant would have been duly elected to the disputed office, is insufficient, and it should have been quashed by the county court. (p. 813.)

3. Such a notice could not be amended after the expiration of ten days from the time the result of the election had been declared, if it could be amended at all. (p. 817.)

*E. W. Wilson* and *B. Wilson* for plaintiff in error.

*J. F. Brown* and *Kenna & Chilton* for defendant in error.

SNYDER, JUDGE:

Writ of error to a judgment of the circuit court of Nicholas county affirming the judgment of the county court of said county, in a contested election case in which the plaintiff in error, John J. Halstead, was contestant, and the defendant in error, A. F. Rader, was contestee. The facts, so far as it is material to give them, are as follows: At the general election held October 14, 1884, the said Rader and Halstead were opposing candidates for the office of clerk of the circuit court of said county. When the commissioners met at the court house on the fifth day after the election to examine the returns and certify the result of the election, they found that the oath, required to be taken and certified by the commissioners under sec. 8, ch. 155, Acts 1882, had not been certified on the poll-books of the John Neal precinct of said county; thereupon they caused the commissioners, who conducted the election at that precinct to appear before them, and it was then proven that the said oath was not taken by A. J. Rippetoe, one of the persons who acted as commissioner at said precinct, but that the two other commissioners and the clerks did in fact take said oath; and on account of the failure of said Rippetoe to take, said oath the said court-house commissioners rejected and refused to count the votes cast at said precinct. Excluding said votes the commissioners found that Rader had received in the county for said office 737 votes and Halstead 707 votes, and they then declared Rader elected and gave him a certificate of his election to said office. Within ten days after the said result had been declared, Halstead caused a notice of contest to be served upon Rader. On December 15, 1884, the return-day of said notice, Halstead moved the county court to docket said motion, to which Rader objected, but the court overruled the objection and permitted the notice to be docketed; and then Rader moved to quash said notice and each specification thereof. Pending this motion Halstead moved the court for leave to file an amendment to his notice, to which Rader, the contestee, objected, but the court overruled the objection and the contestee excepted. The contestee then renewed his motion to quash the original notice and also moved to quash the

amended notice. Both of said motions were overruled by the court and the contestee again excepted. All the proceedings had and the facts proven during the trial are certified in a bill of exceptions taken by the contestant, and it appears therefrom that if the votes cast at said John Neal precinct had been counted, Halstead, the contestant, would have received a majority over the contestee of four votes at said election in the whole county.

If the notice of the contestant is insufficient and the motion of the contestee to quash it should have been sustained, then, regardless of the other questions presented by the record which are relied on by the plaintiff in error to reverse the judgment of the court below, this Court must affirm said judgment. The first question, therefore, to be considered by us, is the sufficiency or insufficiency of the contestant's notice.

Our Constitution declares: "The legislature shall prescribe the manner of conducting and making returns of elections, and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption or fraud in voting, counting the vote, ascertaining or declaring the result, or fraud in any manner upon the ballot." Sec. 11, Art. IV.

This provision is mandatory and plenary, and requires the legislature to prescribe all reasonable laws deemed necessary or proper for the prevention of fraud, securing the purity of elections and ascertaining the results. It imposes no restriction whatever upon the power of the legislature. It is a command and not a grant of power; because the power existed in the legislature independent of the Constitution. The Constitution is a limitation and not a grant of legislative powers. The only restrictions in our Constitution on this plenary power of the legislature are those contained in the first, second and twelfth sections of said fourth article. The first declares, that all the male citizens, with certain specified exceptions, shall be entitled to vote at all elections held in the counties in which they reside. The second, that the voting shall be by ballot either open or secret. And the twelfth section declares that, " No citizen shall ever be denied or refused the right or privilege of voting at an election, because

his name is not, or has not been, registered or listed as a qualified voter."

These are all the limitations or restrictions which the people, by the adoption of the Constitution, deemed it advisable or proper to impose on the legislative power. But not content to leave the exercise of the powers inherent in the legislature and not denied to it, at the discretion of the legislature, the Constitution commands, that it *shall* pass all laws necessary and proper to prevent fraud and secure the purity of elections and returns. No law which is unreasonable can be necessary or proper, and therefore no such law can be regarded as authorized by the Constitution or the general powers of the legislature. But all laws, which are deemed not only necessary but proper for the purpose of fair and honest elections and ascertaining their results, the Constitution commands the legislature to pass. It is necessary and proper that every citizen having a constitutional right to vote should have the power to do so without any improper restrictions. But it is equally important and just as necessary to the purity of elections, that persons not possessing that right should be excluded from the power to vote by reasonable regulations and safeguards to prevent them from doing so, or having their votes counted in ascertaining the result. It is impossible to do this latter without in some degree controlling or burdening the rights of those duly qualified to vote. It is likewise just as important to the qualified voters, that the person elected by their votes should be declared elected as it is that they should have the power to exercise their right to vote. In order, therefore, that the mandate of the Constitution may be respected, it was the duty of the legislature to pass laws which would not only give the legal voter the power to vote and have his vote counted, but it was equally its duty to enact laws which would prevent illegal votes and exclude such votes in ascertaining the result of the election.

As the legislation regulating the right to vote and the conduct of elections is not directly involved in the enquiry now under consideration, that legislation need not be referred to here. It is in regard to the regulations concerning contested elections and ascertaining the results of elections, that the present inquiry immediately relates.

In reference to the first of these, the statute provides : " A person intending to contest the election of another to any county or district office shall, within ten days after the result of the election is declared, give him notice in writing of such intention, and a list of the votes he will dispute, *with the objections to each,* and of the votes rejected for which he will contend. If the contestant object to the legality of the election, or the qualification of the person returned as elected *the notice shall set forth the facts on which such objection is founded.* * * * * Each party shall append to his notice his affidavit that he verily believes *the matters and things therein set forth to be true.*"—Sec. 1 chap. 6, amended Code.

It is evident from the language employed in this statute, that the notice must set forth the facts on which the contest is founded, and that the facts so set forth must be sufficient, if sustained by proof, to make it the duty of the court either to declare the contestant elected to the office or to vacate the election. The object of the notice is not only to give the contestee notice of the grounds of the contest, but it must contain some direct and precise allegation of fact, so as to inform the contestee of the state of facts or matters he is required to meet. The mere general allegations that the contestee was not elected, and that the return declaring him so is untrue, false and fraudulent, afford no information to the contestee of the defence he may be required to make. The statute expressly requires, in the particular cases mentioned in it, that " the objections to each " vote disputed, and " the facts on which the objection is founded " shall be set forth. That such is the requirement of the statute, it seems to me there can be no question.

But this is not all. By the common law contests in regard to offices were always determinable by *quo warranto,* which was in the nature of a criminal writ. This writ was afterwards superseded by proceeding upon an information in the nature of *quo warranto,* and this was applied to the mere purpose of trying the civil right to a franchise or office. *Kneass's Case,* Lead. Cas. on Elections, 337, 340.

This statute must then be treated, as it is in fact, a substitute for an information in the nature of *quo warranto.* In directing the proceedings in such cases, our statute declares,

that, "If, in the opinion of the court the matters in such information are sufficient in law to authorize the same to be filed, an order shall be made filing the same and awarding a summons," &c.   Sec. 9, ch. 109, Amd. Code.   Thus by the express terms of the statute the court must judge of the sufficiency of the allegations or facts set forth in the writ, and allow the same to be filed only in case the allegations are sufficient in law to make out a *prima facie* case against the respondent.   It must be inferred then, that the complaint called in the statute a " notice " does not mean simply an informal paper such as is usually understood by the term notice. It is in the nature of a complaint or information setting out a cause of action as well as the commencement and foundation of an important legal proceeding.   It is more in the nature of an affidavit on which an attachment may issue.   It must set out the facts on which it is founded, and these facts, if true, must be sufficient to change the result of the election. If it fails to do this, it should on motion of the contestee be quashed.   *Skerrett's Case*, Lead. Cas. on Elections, 320 ; *Carpenter's Case*, 2 Pars. 537 ; *Mann* v. *Cassidy*, 1 Brewst. 11.

In *Election Cases*, 65 Pa. St. 36, the court, quoting from the last cited case in regard to election notices of this kind, says : " The rule must not be held so strictly as to afford protection to fraud by which the will of the people is set at naught, nor so loosely as to permit the acts of sworn officers chosen by the people to be inquired into without adequate and well defined cause."   In this case, which treats this kind of notices with more indulgence than many other reported cases, the court seems to concede that such notices must have the same certainty and precision that is required in an indictment.   It says :   " The remedy to set aside an undue or fraudulent election is as important as remedies for other injuries.   If the life, liberty, property and happiness of the citizen demand certainty to a common interest only, why should a contested election require more ?"   65 Pa. St. 36.

It must not be overlooked that the commissioners who declare the result of the election, and whose act is sought to be set aside by the notice or the proceedings founded upon it, in some respects and as to some matters act judicially, and that therefore their acts should not be disturbed, or the party

in whose favor they have decided be required to defend their action, unless specific charges are made and facts stated, which will not only inform the contestee of the matters of contest, but which should be such in the opinion of the court as, if proven, would change the decision rendered by the said commissioners. And if the notice is not sufficient for these purposes it should be quashed. Whatever is done by persons exercising a legal authority, and especially judicial functions, is presumed to be done rightly. *Carpenter's Case*, 2 Pars. 537 ; *Lelar's Case, Id.* 548.

The foregoing views are fully sustained by the decisions in the cases of *Loomis* v. *Jackson*, 6 W. Va. 613, and *Harrison* v. *Lewis*, 6 W. Va. 713. It is true that these cases were decided by special courts, but they were courts duly and legally constituted by the laws of this State, and the decisions were reported by authority of a joint resolution of the Legislature. Acts 1872–'3, p. 759. These decisions were rendered in January, 1873, and since then, though frequent changes have been made in the statute on the subject, no change has been made abrogating or conflicting with the principles announced in said decisions so far as I can discover. If therefore they can not be considered positive authority for this Court, I think they should not at this late day be disregarded unless they should be found to be plainly erroneous in some particular and then only so far as they are so found erroneous. As they are not in conflict with the principles hereinbefore announced they must be held to be authority therefor.

In *Dryden* v. *Swinburn*, 15 W. Va. 234, this Court decided that, in a case in which the contest was the want of qualification in the person declared elected to hold the office, it was only necessary to *set forth the facts* in the notice which showed such disqualification, and that the statute in such case did not require the notice to show that the contestant was entitled to the office. In this case, it is also held that, if the contestant had based his contest on the ground that illegal votes had been received or rejected, then it would have been essential to make the notice good, that it should give a list of such votes with the objections to each vote. 15 W. Va. 263. It seems to me this is a very reasonable interpretation

of the statute and not at all in conflict with the principles
hereinbefore announced. .It is also clear that, if the notice
in such case must state the objections to each vote so im-
properly received or rejected, it is equally essential, where
the contest.is founded upon the rejection of all the votes
given at a particular precinct, that the notice should set forth
the facts which show that the votes given at such precinct
were improperly rejected. If it is required to state the ob-
jections for the rejection of each single vote in the one case,
it is equally, if not more necessary, that the notice should
state the objections to the rejection of all the votes at the
precinct in the other. In the latter case, however, I do not
think it essential that the notice should give a list of the
votes and the objections to each, but it is essential that it
should name the precinct the votes of which were rejected
and the objections which the contestant alleges to such re-
jection. And as in such case the contest, being based on the
rejection of votes claimed to be legal, and not as in *Dryden*
v. *Swinburn* on the disqualification of the contestee, I think
the notice should also show that the contestant, if the facts
stated are proved, would be entitled to the office. Other-
wise the contest would be useless; for the contestee being
qualified to hold the office, the contestant could have no com-
plaint unless he was entitled to it. Any contest which would
not give the office to another would leave the contestee in
the office; and therefore a contest, which did not allege the
illegality of the election, the disqualification of the contestee
or the right of another to the office would be a mere farce.

Let us apply these principles to the case at bar. The no-
tice in this case is as follows:

"*To A. F. Rader*:

"You are hereby notified that I shall contest before the
county court of Nicholas county, West Virginia, your elec-
tion as clerk of the circuit court of Nicholas county at the
recent election held in said county on October 14, 1884, upon
the ground that the commissioners composing the said county
court, in counting the votes upon the examination of the re-
turns made by the commissioners holding the election in the
several election precincts of said county, rejected and threw
out and failed and refused to count the votes cast at John

Neil (20 Mile) precinct in Jefferson district in said county, whereby and by reason of said court refusing and failing to count the votes cast at said election precinct, you were declared to have received a majority of the votes cast in said county at said election for the said office of clerk of the circuit court of said county, and a certificate of your election was accordingly awarded you by said court, whereas, had the votes cast at said John Neil (20 Mile) precinct for said office, and for which I was a candidate at said election, and which were duly and legally certified by the commissioners holding said election at the said precinct, been counted by said court, it would have appeared that I had received a majority of four votes of the votes cast in said county at said election for said office, and should have been declared by said court duly elected thereto; and that I shall then resist and contest your right to hold said office or perform the duties thereof, and shall demand that the votes cast at said precinct be counted by said court, and shall there claim to be myself duly and legally elected to said office at said election.

" You are further notified that I shall docket this notice and insist upon a trial thereof in the county court of Nicholas county on December 15, 1884, if the said court be then in session, and if not in session, then on the first day of the December term, 1884, of said county court.

" JOHN J. HALSTEAD."

It will be observed that the sole ground of contest in this notice, is the refusal of the county court commissioners to count the votes cast at the John Neal precinct. The notice avers that the votes cast at said precinct " were duly and legally certified by the commissioners holding said election at said precinct." It does not aver that said votes were illegally, corruptly, fraudulently, or even improperly rejected. Since, then, no improper act is charged, it necessarily follows that, if under any state of facts or circumstances appearing to said commissioners, they had the legal right to reject and refuse to count duly and legally certified returns from said precinct, the notice is insufficient; beceause it does not show affirmatively that the contestant was necessarily prejudiced or that the contest, if the alleged facts were proved, would change the result of the election.

The statute provides that the commissioners of the county court, when convened to ascertain the result of an election, " may require the attendance of any of the commissioners or canvassers or other officers or persons present at the election, to answer questions under oath respecting the same, and may make such other orders as shall seem proper to procure correct returns and ascertain the true result of the said election in their county.   *   *   *   They shall, upon the demand of any candidate voted for at such election, open and examine any one or more of the sealed packages of ballots and re-count the same," &c.  " If the result of the election be not changed by such re-count," &c.   Sec. 21, ch. 155, Acts 1882.

" Under this act it is the duty of the county commissioners to determine, ministerially, the result, but necessarily, by the exercise of discretion and judgment.  They must first determine, that the ballots, poll-books and certificates before them are genuine, and that they are certified in form and manner substantially according to the requirements of the statute, to correct and put or have them put in form if they are not so, and if they are, in fact and in law, the returns of the election. This involves the exercise of a *quasi* judicial power."—*Brazie v. Commissioners*, 25 W. Va. 213, 221.   Such is the interpretation of this statute by this Court.

The only fact stated in this notice in regard to the votes of said John Neal precinct is, that they " were duly and legally certified."   Now it is positively certain both from the very language of the statute and the absolute necessity of the case, that the county court commissioners are not concluded by the mere legal and formal certification of the poll-books or returns.   It will be conceded that, if the returns are duly and legally certified and in regular form, they must be treated by the county commissioners as *prima facie* correct.   But as between such certified returns and the actual ballots cast at said precinct, the ballots and not the certified returns constitute the primary evidence of the votes cast at said precinct. *Hudson* v. *Solomon*, 19 Kan. 177 ; *State* v. *Buckland*, 23 Kan. 259.   And such is the necessary result of the principles decided by this Court in *Chenowith* v. *Commissioners*, 26 W. Va. 230.

It would be a very anomalous construction to hold, that

the statute which directs the commissioners to open and re-count the votes does not authorize them to use the information obtained by such re-count.    If the certified returns are the primary evidence of the result, and not the ballots, then the provision of the statute authorizing the re-counting of the ballots is ineffectual for any purpose.    Why re-count the ballots if the duly certified returns are conclusive?    There can be no question that the county commissioners have the power to correct the returns from the facts derived from the ballots.    If no ballots are returned, or if those returned are shown to be forged or fraudulent, and not the true ballots cast at the election, the commissioners have the power to reject and refuse to count them, notwithstanding the returns are " duly and legally certified."    And as the county court commissioners are officers duly elected by the people, and in passing upon the result of an election act in a *quasi* judicial capacity, it must be presumed that they acted rightly and within their legal authority, until the contrary is plainly made to appear.    *Loomis* v. *Jackson*, 6 W. Va., 613.

It seems to me, therefore, that inasmuch as the county commissioners had, under some circumstances, the legal right to refuse to count the votes cast at the John Neal pre-cinct, although they " were duly and legally certified," we must, in the absence of any charge or claim that they acted improperly, or any facts even tending to show that their act was not legal, presume that the facts presented to them authorized them to reject said votes, and hold that their act in so doing was legal and proper.

It is unnecessary to decide in this case, any farther than we have already indicated, what in a case like this would be a sufficient notice.    It is certain that a notice like this is wholly insufficient.    It might be, that if it had simply stated that the votes were wrongfully or improperly rejected, it would have been sufficient.    But I am inclined to think, un-der a proper construction of the statute and the general law in such cases, the notice should state the facts on which the contestant objects to the action of the commissioners in re-jecting the votes at said precinct.    The statute requires the contestant, if he objects to the rejection of a single vote, to state his objections, that is, as I understand it, the grounds

or facts on which he objects to the action of the commissioners in rejecting said vote. It, therefore, seems to me but reasonable, if the statute requires such precision in the case of a single vote, that it was not intended that less precision would be sufficient when the objection related to the votes of a whole precinct. Nor does it seem to me, that this requirement of the statute, in view of the legislative power and the mandate of the Constitution in regard to holding and determining the results of elections hereinbefore considered, is at all unreasonable or unnecessary.

Our next enquiry is, could this notice be amended at the time the application was made for that purpose? It will be noticed from the facts before stated, that the application for the amendment was made more than ten days after the result of the election had been declared. Our statute authorizes an additional notice giving specifications of new facts within ten days after the discovery of such facts. Sec. 2, ch. 6, Amd. Code.

The amendment in this case was not as to after discovered facts and so the statute does not apply.

In *Kneass' Case*, Lead. Cas. on Elec. 337, it was decided that, " if a petition, contesting an election, be defective in matter of form or of substance, it may be amended, provided the application to amend be made at the earliest possible opportunity." In a note to this case, it is stated that, " the amendment, however, must be confined to defining more clearly the charges made in the several specifications in the original petition. If it be inconsistent with the petition, or *attempt to introduce new matter*, it will not be allowed,"—citing *Mann* v. *Cassidy*, 1 Brewst. 32; *Thompson* v. *Ewing*, Brewst. 68, 97, 101.

Upon an examination of the authorities and the reasons for and against allowing amendments of notices in contested election cases, I am strongly inclined to think that when such power is not authorized by statute, it should not be exercised, except as to matters merely formal, including the correction of errors, because such amendments do not change the substance of the notice or the character of the issue to be tried. But it seems to me, that no amendment affecting the substance of the notice should be allowed; for by doing so the whole

policy and effect of the statute may be evaded or destroyed. If the contestant, by giving a notice within the prescribed ten days of one ground of contest, may after the expiration of that time amend his notice and have the contest tried upon a substantially different ground, the limitation and the first notice may amount to little or nothing. It is certain, however, upon all the precedents, that a notice which does not state some substantial ground of contest, can not be amended. There can be no amendment unless there is something to amend. A notice which does not state a cause of contest, at least in substance, is a nullity, no more than a blank paper, and therefore it can not be the subject of amendment. *Loomis* v. *Jackson*, (syllabus 21) 6 W. Va. 617.

The notice in the case before us, as we have seen, does not contain the substance of a cause of contest; and therefore, under the most liberal rule, is not the subject of amendment. I am therefore of opinion, that the county court should have refused leave to the contestant to amend his notice, and should have sustained the motion of the contestee to quash the notice. As the result of the trial and judgment in said court were the same in effect as if said notice had been quashed, the judgment of the circuit court affirming that of the county court was right and must be affirmed by this Court, and it is so ordered accordingly.

Green, J., *dissentiente.*

AFFIRMED.