315 S.E.2d 614

**UNITED MINE WORKERS OF AMERICA, etc., et al.**

v.

**Mark SCOTT, etc., et al.**

**No. 16126.**

Supreme Court of Appeals of West Virginia.

April 5, 1984.

■■■■■■■■■■■

Michael H. Holland, General Counsel, UMWA, Washington, D.C., Daniel F. Hedges, Charleston, for appellants.

Chauncey H. Browning, Atty. Gen., James F. Wallington, B. Keith Huffman, Asst. Attys. Gen., Charleston, for appellees.

McGRAW, Justice:

The petitioners in this original mandamus proceeding are the United Mine Workers of America by its international officers: Richard L. Trumka, president; Cecil E. Roberts, vice-president; and John J. Banovic, secretary-treasurer; and William "Bolts" Willis and Terry Osborne, members of the West Virginia Board of Coal Mine Health and Safety. The respondents are Mark Scott, Administrator of the Board of Coal Mine Health and Safety; Walter Miller, Director of the West Virginia Department of Mines and Chairman of the Board of Coal Mine Health and Safety; and, the Board of Coal Mine Health and Safety. Three major areas of concern involving the operation of the Board of Coal Mine Health and Safety are at issue: (1) the promulgation of regulations in response to mining fatalities and injuries; (2) the promulgation of regulations governing the conformance of equipment to coal seams; and (3) the promulgation of procedural rules.[1] Following a brief discussion of the structure and function of the West Virginia Board of Coal Mine Health and Safety, the appropriateness of mandamus

in this case and each of the three major areas of concern will be addressed.

Prior to 1977, coal mine health and safety regulation in West Virginia was accomplished through a combination of statutory law, inspector rulings, and statewide enforcement directives by the Director of the Department of Mines. One consequence of this piecemeal approach was that "[d]uring each session of the legislature, coal mine health and safety standards [were] proposed which require[d] knowledge and comprehension of scientific and technical data related to coal mining." West Virginia Code § 22–2A–1(a)(3) (1981 Replacement Vol.). This situation, in turn, resulted in a growing sense of legislative impotence arising from the "highly specialized, technical and complex" nature of the coal mining industry. West Virginia Code § 22–2A–1(a)(2) (1981 Replacement Vol.). Therefore, the Legislature came to the conclusion that, "The formulation of appropriate regulations and practices to improve health and safety and provide increased protection of miners can be accomplished more effectively by persons who have experience and competence in coal mining and coal mine health and safety." West Virginia Code § 22–2A–1(a)(4) (1981 Replacement Vol.). Thus, in 1977, in vindication of its declaration that " 'the first priority and concern of all in the coal mining industry must be the health and safety of its most precious resource—the miner,' " the Legislature created the Board of Coal Mine Health and Safety, charged with "promulgating rules and regulations in those areas specifically directed ... and those necessary to prevent fatal accidents and injuries." West Virginia Code § 22–2A–1(a)(1) (1981 Replacement Vol.), *quoting* Federal

---

1. Although not raised in the petitioners' petition for writ of mandamus, they have subsequently raised the respondents' failure to promulgate respirable dust standards in addition to those found in West Virginia Code § 22–2–48 (1981 Replacement Vol.). Because this Court has recently held that the Director of the Department of Mines has a mandatory duty to enforce statutory provisions requiring respirable dust control, *see* Syl. pt. 8, *United Mine Workers of America v. Miller,* 170 W.Va. 177, 291 S.E.2d 673 (1982), and because the record is insufficiently developed on this point, the Court will not di-

rectly address this issue except to note that respondent Miller was ordered by this Court in *United Mine Workers of America v. Miller,* 170 W.Va. at 187–188, 291 S.E.2d at 684, to "establish and enforce forthwith standards through which the provisions of W.Va.Code §§ 22–2–48 and 22–2–70d may be enforced consistent with the purpose of protecting the health and safety of miners." If it is shown that the Director of the Department of Mines has failed to comply with this directive, a rule to show cause why he should not be held in contempt by this Court might issue.

Coal Mine Health and Safety Act of 1969, § 2(a), 30 U.S.C. § 801(a) (1976); 1977 W.Va. Acts ch. 121; West Virginia Code § 22–2A–4(a) (1981 Replacement Vol.).

The original Board of Coal Mine Health and Safety consisted of seven members: the Director of the Department of Mines, three management representatives, and three labor representatives. West Virginia Code §§ 22–2A–3(a) and (b) (1981 Replacement Vol.). It was granted broad rule-making authority through its exemption from compliance with the West Virginia Administrative Procedure Act in its promulgation of rules and regulations. West Virginia Code § 22–2A–4(c) (1981 Replacement Vol.). The basic statutory rule-making procedure governing Board operations was a more expeditious notice and comment process. West Virginia Code §§ 22–2A–4(c)(4)–(8) (1981 Replacement Vol.). The original Board existed from 1977 until the end of the fiscal year in 1982. Over this period, the respondents indicate that thirty-two sets of regulations were proposed by the Board, and twenty-four were adopted in final form and published in the state register.

In 1980, the Legislature amended Chapter 22, Article 2A, of the Code, to include requirements that the Director of the Department of Mines "within sixty days of a coal mining fatality or fatalities provide the board with all available reports regarding such fatality or fatalities" and that "[w]ithin one hundred twenty days of [a] review of each such fatality, the board shall promulgate such rules and regulations as are necessary to prevent the recurrence of such fatality...."[2] West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.); 1980 W.Va. Acts ch. 92. In addition, these amendments provided that "the board shall annually, not later than the first day of July, review the major causes of coal mining injuries during the previous calendar year, reviewing the causes in detail, and shall promulgate such rules and regulations as may be necessary to prevent the recurrence of such injuries." *Id.*

In 1982, the Board of Coal Mine Health and Safety was restructured to reduce management and labor representation by one member each, and to include two members of the public, both occupational health and safety professionals, one who has occupational health and safety experience from the worker perspective, and the other with a degree and five years' experience in industrial safety engineering. West Virginia Code § 22–2A–3(a)(1)–(4) (1983 Supp.); 1982 W.Va. Acts ch. 104. These amendments also created the staff position of Health and Safety Administrator within the Board of Coal Mine Health and Safety. West Virginia Code §§ 22–2A–3(c) and 22–2A–4b (1983 Supp.); 1982 W.Va. Acts ch. 104. In this respect, the Legislature made clear that the Administrator "shall work at the direction of the board, independently of the director of the department of mines ...." West Virginia Code § 22–2A–4b(b) (1983 Supp.); 1982 W.Va. Acts ch. 104. In addition, the Legislature provided in the 1982 amendments that "there shall be such other research employees hired by the health and safety administrator as the board determines to be necessary."[3] West Virginia Code § 22–2A–4b(c) (1983 Supp.); 1982 W.Va. Acts ch. 104.

The 1982 amendments also adopted preliminary procedures governing Board conduct prior to the posting of proposed rules and regulations. West Virginia Code § 22–2A–4a (1983 Supp.); 1982 W.Va. Acts ch. 104. The procedures are specific, and

---

**2.** This duty to promulgate rules and regulations in response to coal mine fatalities is mandatory "unless a majority of the quorum present determines that no rules and regulations shall assist in the prevention of the specific type of fatality." West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.).

**3.** In spite of this provision, as well as an earlier one providing that "the board is authorized to employ such personnel, including legal counsel, experts and consultants as it deems necessary," West Virginia Code § 22–2A–4(d) (1981 Replacement Vol.), the respondents state that the administrator is the entire staff of the Board. *See also* West Virginia Code § 22–2A–3(a)(6) (1983 Supp.) ("The director [of the department of mines] shall furnish to the board such secretarial, clerical, technical, research and other services as are deemed necessary to the conduct of the business of the board....").

set forth the process for Board development of proposed rules and regulations:

(a) Prior to the posting of proposed rules and regulations as provided for in subsection (c), section four [§ 22–2A–4(c)] of this article,[4] the board shall observe the preliminary procedure for the development of rules and regulations set forth in this section:

(1) During a board meeting or at any time when the board is not meeting, any board member may suggest to the health and safety administrator, or such administrator on his own initiative may develop, subjects for investigation and possible regulation;

(2) Upon receipt of a suggestion for investigation, the health and safety administrator shall prepare a report, to be given at the next scheduled board meeting, of the technical evidence available which relates to such suggestion, the staff time required to develop the subject matter, the legal authority of the board to act on the subject matter, including a description of findings of fact and conclusions of law which will be necessary to support any proposed rules and regulations;

(3) The board shall by majority vote of those members who are present determine whether the health and safety administrator shall prepare a draft regulation concerning the suggested subject matter;

(4) After reviewing the draft regulation, the board shall determine whether the proposed rules and regulations should be posted and made available for comment as provided for in section four [§ 22–2A–4] of this article;

(5) The board shall receive and consider those comments to the proposed rules and regulations as provided for in section four of this article;

(6) The board shall direct the health and safety administrator to prepare for the next scheduled board meeting findings of fact and conclusions of law for the proposed rules and regulations, which may incorporate comments received and technical evidence developed, and which are consistent with section four of this article;

(7) The board shall adopt or reject or modify the proposed findings of fact and conclusions of law; and

(8) The board shall make a final adoption or rejection of the rules and regulations.

West Virginia Code §§ 22–2A–4a(a)(1)–(8) (1983 Supp.); 1982 W.Va. Acts ch. 104.

I.

▇▇▇ A threshold issue we must address prior to our discussion of the three major areas of concern raised is whether mandamus is an appropriate remedy for the relief sought by the petitioners. First, it is well established in this jurisdiction that "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969); *see also Reed v. Hansbarger*, 173 W.Va. 258, at 261, 314 S.E.2d 616, at 619–620 (1984), and cases cited therein. Second, it is also well settled that "A writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty." Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939); *see also Reed v. Hansbarger*, 173 W.Va. 258, at 262, 314 S.E.2d 616, at 620, and cases cited therein. Finally, as this

---

**4.** It is clear from this language that these preliminary procedures governing Board operations prior to the posting of proposed rules and regulations apply only to the promulgation of general health and safety rules and regulations under West Virginia Code § 22–2A–4(c) (1981 Replacement Vol.), and do not apply to the promulgation of rules and regulations in response to coal mining fatalities and injuries

pursuant to West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.). This results from the Legislature's awareness of the heightened need for expeditiousness in the promulgation of rules and regulations in response to specific fatalities and major causes of injury, as opposed to rules and regulations in more general health and safety areas.

Court stated in Syllabus Point 2, of *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969): "The word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." *See also* Syl. pt. 7, *Hodge v. Ginsberg*, 172 W.Va. 17, 303 S.E.2d 245 (1983); Syl. pt. 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982); *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781, 789–90 (1981); *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689, 705 (1982); Syl. pt. 2, *United Mine Workers of America v. Miller*, 170 W.Va. 177, 291 S.E.2d 673 (1982); *Perry v. Miller*, 166 W.Va. 138, 272 S.E.2d 678, 679 (1980); *State ex rel. R.C.F. v. Wilt*, 162 W.Va. 424, 252 S.E.2d 168, 170 (1979); Syl. pt. 2, *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238 (1978); Syl. pt. 3, *Bounds v. Workmen's Compensation Commissioner*, 153 W.Va. 670, 172 S.E.2d 379 (1970); *Board of Trustees of Policemen's Pension or Relief Fund of City of Huntington v. City of Huntington*, 142 W.Va. 217, 246, 96 S.E.2d 225, 242 (1957).

As in *United Mine Workers of America v. Miller*, 170 W.Va. at 181, 291 S.E.2d at 677, the petitioners in the present mandamus proceeding are representatives of the class which the provisions of Chapter 22 of the Code are designed to protect. Therefore, they have a clear right to compel performance of nondiscretionary duties mandated by the statute. Furthermore, we recognize, as we have in the past, that "While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie." Syl. pt. 4, *Cooper v. Gwinn, supra; see also United Mine Workers of America v. Miller*, 170 W.Va. at 181, 291 S.E.2d at 677. Finally,

as we noted in *United Mine Workers of America v. Miller*, 170 W.Va. at 181, 291 S.E.2d at 677: "The crucial issue involved in each of the petitioners' claims is ... whether the particular statutes upon which they rely provide for the performance of the acts they seek to compel."

## II.

The first major area of concern raised by the petitioners is the promulgation of regulations in response to coal mine fatalities and injuries. As previously noted, the Legislature has mandated that the Director of the Department of Mines provide the Board of Coal Mine Health and Safety with all available reports regarding each coal mine fatality within sixty days of such fatality. West Virginia Code § 22-2A-4(e) (1981 Replacement Vol.). The Legislature has also mandated that within one hundred twenty days after the review of these fatalities, the Board must promulgate rules and regulations to prevent their recurrence unless "a majority of the quorum present" determines that no regulations could assist in preventing the type of fatality in question. *Id.* Finally, the Legislature has mandated that the Board conduct an annual review of the major causes of coal mining injuries and that the Board promulgate regulations designed to prevent the recurrence of such injuries. *Id.*

The respondents admit that since the Board's restructuring in 1982, it has failed to promulgate any substantive regulations pursuant to these statutory mandates. They do mention that four sets of regulations have been promulgated over this time period "which generally enure to the benefit of mine safety," although they admit that none of these regulations have arisen as the result of any one mine fatality.[5]

5. These four sets of regulations deal with record keeping of certified mine employees; searches for intoxicants; written reports of accidents; and, the duties of mine foremen. It should be noted, however, that in all of these areas, with the exception of record keeping of certified mine employees, the actions taken by the Board were merely amendments to regulations promulgated prior to the Board's restructuring in 1982. Therefore, in reality, the Board has promulgated only one *new* set of regulations since its restructuring. Other, more health and safety oriented subject areas, such as the control of respirable dust, the movement of mining equipment, roof control practices, preshift examinations of belt conveyors, drilling, welding, cutting, surface areas of underground mines, curtains, track equipment, track, belts, and feeders, have either been tabled indefinitely, removed from consideration, returned to the Director of the Department of Mines for further consideration, or are before the Board in the form of a committee report.

They also state that following the review of each of the seventeen fatalities which have occurred since the Board's restructuring, the Board has arrived at a "general consensus" that regulations would not prevent the recurrence of the fatality involved, although they admit that a formal vote was not taken in any of these cases.

 Without a formal vote, it is difficult to comprehend how the Board can comply with its duty to promulgate regulations in response to coal mine fatalities unless "a majority of the quorum present" determines that such regulations would have no beneficial effect. The statute clearly contemplates, and fundamental due process dictates, that a formal vote will be taken when it requires the agreement of a majority of the quorum present. Operating through "general consensus" is unlawful where the Legislature has mandated that a specific number of Board members must agree not to promulgate regulations when a coal mine fatality is involved. Although West Virginia Code § 22–2A–4(c) (1981 Replacement Vol.) exempts the Board from compliance with the West Virginia Administrative Procedure Act in its promulgation of rules and regulations, it is not given plenary power in such promulgation. As with any other executive rule-making body, the Board of Coal Mine Health and Safety can only act as the Legislature was mandated and must give reasons for its actions. *See Ney v. State Workmen's Compensation Commissioner*, 171 W.Va. 13, 297 S.E.2d 212 (1982); *Rowe v. West Virginia Department of Corrections*, 170 W.Va. 230, 292 S.E.2d 650 (1982); *Anderson & Anderson Contractors, Inc. v. Latimer*, 162 W.Va. 803, 257 S.E.2d 878 (1979); *State Human Rights Commission v. Pauley*, 158 W.Va. 495, 212 S.E.2d 77 (1975), *overruled on other grounds, State Human Rights Commission v. Pearlman Realty Agency*, 161 W.Va. 1, 239 S.E.2d 145 (1977); *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W.Va. 766, 197 S.E.2d 111 (1973); *Walter v. Ritchie*, 156 W.Va. 98, 191 S.E.2d 275 (1972); and, *Monongahela Power Co. v. Public Service Commission of West Virginia*, 166 W.Va. 423, 276 S.E.2d 179 (1981); *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions*, 160 W.Va. 220, 233 S.E.2d 719 (1977); *Mountain Trucking Co. v. Public Service Commission*, 158 W.Va. 958, 216 S.E.2d 566 (1975). The Board must adopt findings of fact and conclusions of law when it chooses to promulgate general health and safety rules or regulations. West Virginia Code §§ 22–2A–4a(a)(7) and (b) (1983 Supp.). Similarly, the Board must publish its reasons for choosing not to promulgate proposed rules or regulations. West Virginia Code § 22–2A–4(c)(7) (1981 Replacement Vol.). These requirements, along with the requirement that a formal vote be taken when a Board determination must be made by a majority of the quorum present, are designed to prevent arbitrary and capricious conduct in the Board's acceptance or rejection of proposed rules and regulations, and to insure the meaningful reviewability of the Board's action or inaction.

 After the Board of Coal Mine Health and Safety has completed its review of a coal mine fatality pursuant to West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), the Director of the Department of Mines, as Chairman of the Board of Coal Mine Health and Safety, has a mandatory duty to bring the issue of whether the promulgation of rules and regulations by the Board could assist in preventing the recurrence of such fatality to a formal vote. Similarly, after the Board of Coal Mine Health and Safety has completed its annual review of the major causes of coal mining injuries during the previous calendar year pursuant to West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), the Director of the Department of Mines, as Chairman of the Board of Coal Mine Health and Safety, has a mandatory duty to bring the issue of whether the promulgation of rules and regulations by the Board could assist in preventing the recurrence of such injuries to a formal vote. Under West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), the Director of the Department of Mines, as Chairman of the Board of Coal Mine Health and Safety, has a mandatory duty to provide the Board with all available reports regarding all coal mine fatalities

within sixty days of each fatality. The Board of Coal Mine Health and Safety then has a mandatory duty under West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.) to promptly review such reports, and to promulgate such rules and regulations as are necessary to prevent the recurrence of the specific type of coal mining fatality reviewed within one hundred twenty days of the date of such review, unless a majority of the quorum present determines that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the specific type of fatality reviewed. Under West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), the Board of Coal Mine Health and Safety has a mandatory duty to conduct an annual review, between the first day of January and the first day of July, of the major causes of coal mining injuries during the previous calendar year, and to promulgate such rules and regulations during this six month time period as are necessary to prevent the recurrence of the major causes of coal mining injuries reviewed, unless a majority of the quorum present determines that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the major causes of injuries reviewed. Furthermore, under West Virginia Code § 22–2A–4(c)(7) (1981 Replacement Vol.), the Board of Coal Mine Health and Safety has a mandatory duty to publish, within a reasonable time, its reasons, in the form of findings of fact and conclusions of law, for determining that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the specific type of fatality or major cause of injury reviewed.

The 1980 amendments to Chapter 22, Article 2A, of the Code, substantially intensified the Board's mandatory duty to promulgate rules and regulations in response to coal mining fatalities and injuries. *See* 1980 W.Va. Acts ch. 92. The 1980 amendments added the third sentence to West Virginia Code § 22–2A–4(a) (1981 Replacement Vol.), providing that "The board of coal mine health and safety shall devote its time toward promulgating rules and regulations in those areas specifically directed by this chapter *and those necessary to prevent fatal accidents and injuries.*" (Emphasis added). 1980 W.Va. Acts ch. 92. The Board's authorization to hire such personnel as it deems necessary to carry out its duties was greatly strengthened. *Compare* West Virginia Code § 22–2A–4(d) (1983 Replacement Vol.) *with* West Virginia Code § 22–2A–4(d) (1981 Replacement Vol.). Finally, the 1980 amendments added subsection (e) to West Virginia Code § 22–2A–4 (1978 Replacement Vol.), to provide in pertinent part:

The director shall within sixty days of a coal mining fatality or fatalities provide the board with all available reports regarding such fatality or fatalities.

The board shall review all such reports, receive any additional information and may, on its own initiative, ascertain the cause or causes of such coal mining fatality or fatalities. Within one hundred twenty days of such review of each such fatality, the board shall promulgate such rules and regulations as are necessary to prevent the recurrence of such fatality, unless a majority of the quorum present determines that no rules and regulations shall assist in the prevention of the specific type of fatality. Likewise, the board shall annually, not later than the first day of July, review the major causes of coal mining injuries during the previous calendar year, reviewing the causes in detail, and shall promulgate such rules and regulations as may be necessary to prevent the recurrence of such injuries.

1980 W.Va. Acts ch. 92.

 As noted previously in footnote four, the preliminary procedures governing Board operations prior to the posting of proposed rules and regulations under West Virginia Code § 22–2A–4a (1983 Supp.), do not apply to the promulgation of rules and regulations in response to coal mining fatalities and injuries pursuant to West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.). In addition, it is clear from the language and structure of the statute, that the posting, notice, comment, and public hearing provisions of West Virginia Code

§ 22–2A–4(c)(4)–(7) (1981 Replacement Vol.), are also inapplicable to the promulgation of rules and regulations in response to coal mining fatalities and injuries. The Legislature, in its intensification of Board focus on coal mine fatalities and major causes of injury, has dispensed with procedural requirements governing the promulgation of other, more generalized, health and safety rules and regulations in favor of maximizing the Board's ability to promulgate rules and regulations, having the force and effect of law upon promulgation, designed to prevent the recurrence of fatalities and major causes of injury in the most expeditious fashion possible.

Examples of subject areas that have gone unregulated due to Board inaction which have caused, and continue to cause, deaths and serious injuries in our state's coal mines are numerous.

The petitioners indicate that regulations governing the surface areas of underground mines are a significant area of need, and point out that while workers at surface areas serving surface mines are protected by rather extensive regulations promulgated by the Director of the Department of Mines in 1978, workers at identical surface areas serving deep mines are left unprotected by the Board's inaction. In a report presented to the Board on August 29, 1983, the Administrator stated, "Surface areas of underground mining operations contain numerous conditions which are proven or potential safety hazards. Since 1980, over 10 percent of the fatalities each year have occurred at surface installations.... Existing state law and regulations do not cover the potential safety hazards at surface mines in a comprehensive manner." *See also* West Virginia Code §§ 22–2–50, –53 (1981 Replacement Vol.) (statutes relating to surface structures and practices). Yet, the Board has failed to promulgate regulations in this area.

A second area which has been recognized as a significant cause of fatalities and injuries in our state's coal mines regards transportation and equipment. In this respect, the Administrator, in a report presented to the Board on July 29, 1983, stated, "Machinery and haulage in underground mines pose a daily hazard to miners. Since 1980 there have been seventeen (17) fatalities related to machinery and haulage...." *See also* West Virginia Code §§ 22–2–37, –39 (1981 Replacement Vol.) (statutes relating to transportation); West Virginia Code § 22–2–28a (1981 Replacement Vol.) (statute relating to the size of underground mining equipment). Yet, the Board has failed to promulgate regulations in this area.

A third area of coal mine health and safety upon which the Board of Coal Mine Health and Safety has failed to promulgate regulations was discussed by this Court in *United Mine Workers of America v. Miller*, 170 W.Va. at 185, 291 S.E.2d at 681:

In this jurisdiction, we notice, it is not disputed by persons of reputable intellect that exposure to excessive levels of respirable dust constitutes the most serious health hazard which the modern coal miner experiences on a daily basis.... Control of respirable dust is a necessary ingredient of any plan which has as its objective the protection of the health and safety of coal miners.... The statutes contemplate that minimum standards for safe levels of respiratory dust exposure will be established, and that the standards will be fully and effectively enforced.

*See also* West Virginia Code § 22–2–70d (1981 Replacement Vol.) (statute relating to control of respirable dust). Yet, the Director of the Department of Mines, under this Court's directive that he establish standards for the enforcement of legislative respirable dust standards, cast the deciding vote, as Chairman of the Board of Coal Mine Health and Safety, on the Board's determination to remove proposed respirable dust standards from further Board consideration on July 29, 1983. No further action has been taken by the Board since this vote on the critical issue of the promulgation of respirable dust regulations.

Finally, despite the recognition by the Administrator, in a report presented to the Board, that, "Roof falls and rib rolls are the chief causes of fatalities in Under-

ground mines in West Virginia today," no rules or regulations have been promulgated which address this major cause of fatalities. In fact, the Administrator indicates that, of the seventeen fatalities occurring since the Board's reorganization in 1982, eight have been the result of roof falls. *See also* West Virginia Code §§ 22–2–26, –28a (1981 Replacement Vol.) (statutes relating to roof, face, and rib control). Yet, while the lives and limbs of our state's coal miners, legislatively recognized as the industry's most precious resource, are threatened by roof and rib practices, as well as by practices in the other areas previously discussed, the Board of Coal Mine Health and Safety dallies and fails to promulgate rules and regulations which address these major causes of illness, injury, and death.

Frustrated by the Board's failure to promulgate rules and regulations to prevent the recurrence of known causes of fatalities and injuries, petitioner Osborne presented the Administrator with an outline of potential subjects for regulation on January 21, 1983.[6] This action was taken pursuant to West Virginia Code § 22–2A–4a(a)(1) (1983 Supp.), which provides, "During a board meeting or at any time when the board is not meeting, any board member may suggest to the health and safety administrator ... subjects for investigation and possible regulation."[7] After such suggestion is made, the Administrator must prepare a report to be given at the next scheduled Board meeting containing technical evidence which relates to the suggestion; the staff time required to

---

**6.** The list of subjects for regulations presented by Board member Osborne was as follows:

SUBJECTS FOR REGULATIONS

I. Transportation
 A. Transportation—General requirements.
 1. Dead man switches on haulage equipment.
 2. Equipment defects corrected before use.
 3. First aid kits for mantrips.
 4. Audible devices on battery powered equipment.
 5. Locomotives—automatic return control, automatic braking, lockdowns on trolley poles, maximum loads.
 6. Training of certified electricians of new equipment brought into their mine.
 B. Check Curtains
 1. Translucent plastic only.
 2. Removal of curtain when not in use.
 C. Access Roads maintained safe.
 D. Track Haulage—Specific requirements to assure maintenance of track.
 E. Track haulage and railroad cars outside
 1. Specific requirements to assure that railroad cars are dropped safely—limitation on number and manner etc.
 2. Maintenance of railroad beds, etc., on mine property.
 3. Warning procedures, etc., for railroad cars.
 F. Dumping areas
 1. Specifications for dumping areas.
 2. Warning devices
 G. Belts and feeders
 1. Cleaning of belt rollers.
 2. Adequate illumination for beltheads.
 3. Panic bars to deenergize crushers and feeders.
II. Roof Control
 1. Probe extension on methane detectors.
 2. No use of mining techniques requiring miners to go under unsupported roof.

 3. Clearance between underground equipment and roof.
 4. Self-centering valves on roof bolt machines.
 5. Canopies on shuttle cars—no obstructions.
 6. Hydraulic adjustments on canopies to prevent lowering canopies more than 18 inches from machine.
 7. Rib control plan for seams exceeding 6 feet.
 8. Special consideration to linears in roof plan—extra support.
 9. Miner participation on roof control plan.
III. Safety requirements for use of cranes.
IV. Equipment and other safety requirements on surface areas of underground mines.
V. Procedure for right to refuse to work in unsafe area.
VI. Standards relative to barometric pressure and methane gas liberation.

**7.** It is important to reemphasize at this point that the preliminary procedures for the promulgation of rules and regulations under West Virginia Code § 22–2A–4a (1983 Supp.), do not apply to the promulgation of rules and regulations promulgated in response to fatalities and injuries. Although it appears that Osborne's suggestions were, in fact, an attempt to spur the Board into fulfilling its mandatory duty to promulgate rules and regulations in response to fatalities and major causes of injury, and therefore not subject to the procedural requirements under West Virginia Code § 22–2A–4a (1983 Supp.), for purposes of analysis they will be treated as suggestions of subject areas for regulation under West Virginia Code § 22–2A–4(a)(1) (1983 Supp.).

develop the subject matter; the legal authority of the Board to act in that area; and a description of the findings of fact and conclusions of law necessary to support proposed rules and regulations dealing with the suggested area of regulation. West Virginia Code § 22–2A–4a(a)(2) (1983 Supp.). A majority vote of those members of the Board who are present at the time this report is presented then determines whether the Administrator should prepare a draft regulation on the matter in question. West Virginia Code § 22–2A–4a(a)(3) (1983 Supp.).

Despite the clarity of this legislatively mandated regulatory proposal process, the suggestions submitted by Board member Osborne were not properly handled by the Administrator. First, the Administrator asked Osborne to wait and submit his regulatory proposal to the entire Board when it next convened. This action conflicts with statutory provisions that suggestions may be made at any time and that the Adminis-

trator is the proper recipient of those suggestions. *See* West Virginia Code § 22–2A–4a(a)(1) (1983 Supp.). Second, after Osborne subsequently submitted his suggestions to the entire Board, the Chairman requested that Osborne withdraw his suggestions and resubmit them at a later date after Osborne had provided more detail explaining each suggestion. Clearly, the statute provides that a Board member may suggest "subjects" for investigation and possible regulation, it does not require a Board member to conduct his own investigation prior to submission. *See* West Virginia Code § 22–2A–4a(a)(1) (1983 Supp.). Finally, after Michael Burdiss, a United Mine Workers of America representative, sent a letter to the Administrator correlating Osborne's suggestions for regulation with specific mine fatalities,[8] and after Osborne resubmitted his suggestions in the form of draft regulations on roof control, surface areas of underground mines, and

---

**8.** The following examples of the relationship between Osborne's suggested areas for regulation and specific coal mine fatalities were contained in Burdiss' letter:

A. The Transportation and Equipment etc. suggestions, *E.g.*:

1. Correction of equipment defects before use—Fatal # 10, 1980

2. Requirement of audible devices on battery powered equipment—Fatal # 8, 1980

3. Prohibition of alterations to equipment to reduce safety—Fatal # 2, 1980; Fatal # 12, 1981; Fatal # 14, 1981

4. Check curtains to be constructed of translucent plastic and being removed when not in use—Fatals # 12, # 2, 1980

5. Locomotives required to have automatic return control, automatic braking, lockdowns on trolley poles and maximum load limits—Fatals # 6, # 7, 1982

6. Track haulage and railroad car safety requirements—Fatal # 4, 1980; Fatal # 10, 1982

7. Belts and feeder Requirements—cleaning of belt rollers, panic bars—Fatal # 6, 1980; Fatal # 17, 1982; Fatal # 7, 1980

B. Safety Requirements on Surface Areas of Underground Mines—e.g. Roads and Haulage, Dumping Areas, Equipment, Railroad Cars and Tracks, Other Areas. (Fatalities every year—Regulations badly needed)

C. Roof Control suggestions—e.g.

1. Self cleaning valves on roof bolt machines—Fatal # 19, # 10, 1980

2. Proper construction of canopies—Fatal # 2, 1980

3. Clearance between underground equipment and roof—a regular cause of fatalities

4. Hydraulic adjustments on canopies to prevent lowering canopies more than 18 inches from the machine—Fatal # 19, 1980

5. Rib control plan for seams exceeding six feet—Fatal # 12, 1982

6. No use of mining techniques requiring miners to go under unsupported roof—Fatal # 14, 1980

7. Withdrawal of equipment to supported areas for repairs—Fatal # 6, 1981

8. No modifications to equipment that reduces visibility and safety—Fatal # 12, 1981; Fatal # 2, 1980

9. Canopies on continuous miners and shuttle cards, [*sic*] etc.—Fatal # 13, 1980, Fatal # 20, 1982; Fatal # 21, 1982

10. Roof plans to have drawings for sequence pillar extraction—Fatal # 13, 1980, Fatal # 24, 1980

11. All plans prohibit the extracting of two or more pillar blocks simultaneously from roadway—Fatal # 24, 1980; Fatal # 13, 1980

12. All roof plans prohibit supervisory personnel from performing other duties—Fatal # 5, 1981; Fatal # 19, 1981; Fatal # 12, 1981

13. All roof plans for manual installation of temporary supports require approval of foreman before further work—Fatal # 18, 1981

14. Adequate training of employees in roof and rib control—Fatal # 11, 1980; Fatal # 16, 1980

transportation and equipment, three committees were appointed by the Chairman to study these areas.

The Administrator, in an affidavit submitted in the present case, expresses concern with both the propriety and utility of this committee process. He states that since October 1982, ten different committees have been created in ten different regulatory areas to assist him in his research and drafting efforts. Still at issue, however, according to the Administrator, are such fundamental questions as how members are to be appointed; how issues are to be addressed in committee; how committee decision-making is to take place, either by general consensus or formal vote; how detailed committee reports should be; what should be reported to the full Board; and whether recommendations made by committee members in the minority on an issue must be presented to the full Board. The Administrator also indicates that the public members of the Board have expressed concern that the use of committees sometimes prevents them from fully understanding an issue before it is brought to a formal vote before the entire Board. Ultimately, as the Administrator states, "The result has been additional delay in getting issues resolved."

■ There is no statutory authority, either express or implied, for the utilization of committees to assist the Administrator in the performance of his mandatory duties.[9] The statute speaks concerning action by the "board," by "a majority of the quorum present," or by "at least four members of the board." *See* West Virginia Code §§ 22–2A–3, –4b (1981 Replacement Vol. & 1983 Supp.). Further, the statute provides that "A quorum of the board shall be five members which shall include the director, at least one member representing the viewpoint of operators and at least one member representing the viewpoint of the working miners, and the board may act

officially by a majority of those members who are present." West Virginia Code § 22–2A–3(f) (1983 Supp.). Actions by committees whose composition does not comply with this mandate can be characterized only as "unofficial." The only committee contemplated by the statute is the Board itself which can be characterized as a committee of the whole.

■ The preliminary procedures for the promulgation of rules and regulations mandated by the Legislature do not contemplate direct Board participation in the Administrator's preparation of reports on suggestions, draft regulations, and findings of fact and conclusions of law for proposed regulations, pursuant to West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.). Indeed, it is contemplated by the Legislature that Board support personnel, working under the supervision of the Administrator and the Board, will assist the Administrator in the performance of his various duties, particularly those under West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.). First, West Virginia Code § 22–2A–3(a)(6) (1983 Supp.), mandates that, "The director [of the department of mines] *shall* furnish to the board such secretarial, clerical, technical, research and other services as are deemed necessary to the conduct of the business of the board...." (Emphasis added). Second, West Virginia Code § 22–2A–4(d) (1981 Replacement Vol.), provides that, "To carry out its duties and responsibilities, the board is authorized to employ such personnel, including legal counsel, experts and consultants as it deems necessary." Finally, West Virginia Code § 22–2A–4b(c) (1983 Supp.), mandates that, "In addition to the health and safety administrator, there *shall* be such other research employees hired by the health and safety administrator as the board determines to be necessary. The health and safety administrator shall provide supervision and direction to

---

**9.** This is not to say, however, that subcommittees may not be created to perform other, very limited, nonobstructionistic functions. The Legislature implicitly recognized the Board's right to create subcommittees in West Virginia Code § 22–2A–7 (1983 Supp.), which provides,

"No employer shall prohibit a member of the board from exercising leave of absence from his place of employment in order to attend a meeting of the board *or a meeting of a subcommittee of the board ....*" (Emphasis added).

[these] other research employees...." (Emphasis added). The Legislature has been generous in making ample provision for the employment of personnel necessary for the Board's expeditious functioning. The typical bureaucratic plea of lack of help as an excuse for inaction or failure to perform mandatory duties, under this statutory scheme, is totally without merit.

Despite a clear intention to the contrary, what was designed by the Legislature as fundamentally a one tier system for the promulgation of rules and regulations has been transformed into a two tier system through the proliferation of subject matter committees. The result of this proliferation has been both delay and confusion, with a number of committees composed of different combinations of Board members pursuing different subject areas of regulation. Rather than a concentrated Board effort at effectively addressing the most critical coal mine health and safety hazards, its ability to promulgate needed rules and regulations has been severely crippled through the dilution of its membership into smaller, but no less politicized, units.

If Board members desire input in the execution of the Administrator's mandatory duties under West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1982 Supp.), they may do so individually. For example, Board members may submit technical evidence to the Administrator to support their recommendations for regulatory activity or draft regulations to assist the Administrator in his drafting of proposed regulations. Nevertheless, under West Virginia Code § 22–2A–3(f) (1983 Supp.), the Board of Coal Mine Health and Safety may act officially only through the formal vote of a majority of the quorum present; committees and subcommittees of Board members may not be created to obstruct the Health and Safety Administrator of the Board in the performance of his mandatory duties

under West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.). Although the Court recognizes that, under West Virginia Code § 22–2A–4a(b) (1983 Supp.), the Board may, by the concurrence of at least four members, dispense with the preliminary procedures for the promulgation of rules and regulations set forth in West Virginia Code § 22–2A–4a(a) (1983 Supp.), including the mandatory duties of the Administrator under West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.), the purpose of this provision is solely to expedite the promulgation of health and safety rules and regulations. Replacing this legislatively mandated procedure with a committee and subcommittee system only serves in theory, and has only served in practice, to impede and obstruct Board progress in the promulgation of rules and regulations.

Both the petitioners and the respondents in this case express concern about the prioritization of subject areas for regulation. The Legislature, however, has already clearly established the Board's priorities. In defining the function of the Board of Coal Mine Health and Safety, the Legislature has provided that "The board of coal mine health and safety shall devote its time toward promulgating rules and regulations in those areas specifically directed by this chapter and those necessary to prevent fatal accidents and injuries." [10] West Virginia Code § 22–2A–4(a) (1981 Replacement Vol.). Furthermore, as previously noted, the legislative purpose behind the creation of the Board of Coal Mine Health and Safety is to protect the health and safety of the coal miner. *See* West Virginia Code § 22–2A–1(a)(1) (1981 Replacement Vol.). The protection of the health and safety of the coal miner, in fact, through the promulgation of rules and regulations by the Board, provides its only justification for existence. The petitioners, in bringing this mandamus action, simply seek vindication

---

10. We also pause to emphasize, as we did in *United Mine Workers of America v. Miller*, 291 S.E.2d at 681, that West Virginia Code § 22–2A–4(c)(2) (1981 Replacement Vol.), provides that, "No rules or regulations promulgated by the board of mines shall reduce or compromise the level of safety or protection afforded

miners below the level of safety or protection afforded by this Chapter." This legislative mandate insures a floor of coal mine health and safety protection, which represents the level of progress that had been achieved legislatively up until the creation of the Board, below which Board rules and regulations may not fall.

of the legislative purpose behind creation of the Board. As representatives of the class this legislation was designed to protect, *see Cooper v. Gwinn supra,* they seek to enforce the Board's duty to promulgate rules and regulations in those areas specifically directed by the Legislature, and those areas necessary to prevent further fatalities and injuries in our state's coal mines.

### III.

The second major area of concern raised by the petitioners is the promulgation of regulations governing the conformance of underground mining equipment to the height of the seam being mined. In this area, as in the previous area of regulations responding to fatalities and injuries, the mandatory duty of the Board of Coal Mine Health and Safety is clear. West Virginia Code § 22-2-28a (1981 Replacement Vol.), provides:

The use of underground mining equipment of a size that does not conform to the height of the seam being mined, which creates unsafe working conditions for the miner operating the equipment or others, is prohibited. The board of coal mine health and safety *shall* promulgate such rules and regulations as are necessary to effectuate this section. (Emphasis added).

The respondents admit that when equipment does not conform to seam height, a hazardous condition may result. In fact, in an attachment to an affidavit submitted by respondent Miller, eleven mining fatalities occurring since 1977 are outlined which resulted from miners being caught between mining equipment and the roof and ribs of a mine. In addition, we note the significant interrelationship between the need for regulations governing the construction and operation of transportation and equipment as previously discussed and the need for regulations governing the size of underground mining equipment as presently discussed. Yet, rules and regulations have not been promulgated governing equipment construction and operation pursuant to the previously mentioned statutory mandate. We therefore hold that under West Virginia Code §§ 22-2-28a and 22-2A-4(a) (1981 Replacement Vol.), the Board of Coal Mine Health and Safety has a mandatory duty to promulgate rules and regulations necessary to effectuate the legislative mandate that underground mining equipment conform to the height of the seam being mined.

### IV.

The final major area of concern raised by the petitioners is the Board's proposed promulgation of procedural rules governing Board operations. West Virginia Code § 22-2A-4a(c) (1983 Supp.), provides that "Without undue delay, the board shall adopt an order of business for the conduct of meetings which will promote the orderly and efficient consideration of proposed rules and regulations in accordance with the provisions of this section." In response to this mandate, an "order of business" governing all regular Board meetings was adopted by the Board on October 8, 1982. It organized the Board's agenda into the following categories: "1. Approval of Minutes. 2. Review of mine injuries and fatalities occuring [*sic*] since last meeting. 3. Report by Administrator and discussion. 4. Consideration of suggested and draft rules and regulations. 5. Other business." In addition to this outline, West Virginia Code §§ 22-2A-4a(a)(1)-(8) (1983 Supp.), further delineates Board procedure with regard to the promulgation of general health and safety rules and regulations.

The petitioners basically contend that the Board may not adopt any other procedural rules in addition to the "order of business" already adopted by the Board and those provided by the Legislature concerning the promulgation of rules and regulations in West Virginia Code §§ 22-2A-4a(a)(1)-(8) (1983 Supp.). They also contend that the draft procedural regulations now before the Board will only serve to frustrate the Board's duty to promulgate health and safety regulations designed to prevent coal mine fatalities and injuries.

In response to the petitioners' first contention, it is clear that, in addition to the

legislatively mandated "order of business," the development of other procedural rules by the Board was contemplated by the Legislature. In this respect, West Virginia Code § 22–2A–4a(b) (1983 Supp.), provides that "By the concurrence of at least four members of the board, the board may dispense with the procedure set out in (a) above *or any other procedural rule established ...."* (Emphasis added). Implicit in this provision is the legislative assumption that the Board may adopt procedural rules in addition to those established by the Legislature. Also implicit in this provision, however, as well as in West Virginia Code § 22–2A–4a(a)(c) (1983 Supp.), which provides that the "order of business" be designed to "promote the orderly and efficient consideration of proposed rules and regulations," is the legislative assumption that the Board may deviate from the procedural rules established by the Legislature only in order to *expedite* the promulgation of substantive health and safety rules and regulations. Significantly, the Legislature has provided that "the board *shall* observe the preliminary procedure for the development of rules and regulations set forth in this section [West Virginia Code § 22–2A–4a(a) (1983 Supp.)], unless "[b]y the concurrence of at least four members of the board," it dispenses with these legislatively mandated procedural requirements in order to expedite the promulgation of rules and regulations. West Virginia Code §§ 22–2A–4a(a) and (c) (1983 Supp.). This legislatively expedited scheme for the promulgation of coal mine health and safety rules and regulations arises from the critical nature of the issues involved, permitting the Board to act in emergencies in an expeditious fashion.

After encountering difficulties, particularly in the area of the promulgation of substantive regulations, the Board directed the Administrator on May 25, 1983, to prepare draft procedural regulations for Board consideration. On August 29, 1983, the Administrator presented draft procedural regulations to the Board. Following subsequent Board review and revision, it directed the Administrator to prepare preliminary findings of fact for Board approval. On December 3, 1983, after the Administrator's presentation of preliminary findings of fact, the Board voted to review the proposed regulations and accompanying findings of fact and to take them up for consideration at its next meeting. On January 17, 1984, however, this mandamus action was filed, which *inter alia* challenges the authority of the Board to promulgate these proposed procedural rules. On February 10, 1984, the Board voted to table action on these regulations pending disposition of this mandamus action.

In addition to the petitioners' challenge of the authority of the Board to promulgate procedural rules, the petitioners also complain concerning the oppressive nature of specific provisions contained within these proposed procedural rules. They contend that these rules will obstruct, rather than expedite, the promulgation of substantive health and safety rules and regulations. For example, section 5.01(b) of the proposed procedural rules provides:

All suggestions shall be submitted in the following format:

(1) Brief statement of the problem.

(2) Reference to any relevant Code section or Administrative Regulation.

(3) Brief statement of why the problem justifies consideration by the Board. Identify whether action on the stated problem is needed to:

(a) prevent the causes of recent fatalities (identify whenever possible);

(b) prevent the causes of recent nonfatal injuries;

(c) reduce or eliminate a potential safety or health hazard; or

(d) address an existing regulation which is ineffective, inefficient, burdensome, or inconsistent with good mining practices.

Although we find the petitioners' assertion that the potential effect of this proposed rule would be that Board members would need "legal and drafting expertise to be able to make suggestions for regulation" hyperbolic, this proposed procedural rule is illustrative of how several of these pro-

posed rules conflict with the statutory scheme devised by the Legislature.

As previously noted, West Virginia Code § 22–2A–4a(a)(1) (1983 Supp.), provides that Board members may "suggest" to the Administrator "subjects" for investigation and possible regulation. The word "suggest" has been defined as "to mention or imply as a possibility;" and, "to propose as desirable or fitting." *See* Webster's New Collegiate Dictionary 1156 (1979). The word "subject" has been defined as "something that forms a basis (as for action, study, discussion, or use)." *See* Webster's Third New International Dictionary 2275 (1970). This provision, and the definitions of its operative terms, reveal a legislative intent that the process for the suggestion of subjects for regulation by Board members to the Board Administrator be a relatively informal one. Legislative use of the term "subjects" implies that member suggestions in the form of broad categories for regulation are sufficient. Therefore, the additional requirements that would be imposed on Board members when suggesting subjects for regulation under the proposed procedural rules directly conflict with the legislative intent that the process for the initiation of regulation by Board members be as informal and expeditious as possible.

■■■ In addition to the conflict between the proposed procedural rules governing suggestions for regulation and the Legislature's desire for expeditiousness in this area, other proposed procedural rules governing other areas of Board activity similarly conflict with a legislative intent that Board promulgation of health and safety regulations be as expeditious as possible. Evidence of such legislative intent is found in its exempting the Board of Coal Mine Health and Safety in its promulgation of rules and regulations from the more stringent requirements of the West Virginia Administrative Procedure Act. *See* West Virginia Code § 22–2A–4(a) (1981 Replacement Vol.). Many of the Board's proposed procedural rules serve not to hasten the promulgation of health and safety regulations, but rather to create unavoidable delay. Although the Board of Coal Mine Health and Safety may promulgate procedural rules and regulations to aid and assist in expediting its promulgation of health and safety rules and regulations, any procedural rule or regulation that either conflicts with a legislatively mandated procedural rule or otherwise obstructs or delays the promulgation of health and safety rules and regulations is invalid.

### V.

A review of the recent history of the operations of the Board of Coal Mine Health and Safety reveals an emphasis on the obstruction of the promulgation of health and safety rules and regulations. Both the creation of subject matter committees and the proposed hypertechnical procedural rules have resulted, or would have resulted, in further institutional obstruction to the promulgation of health and safety rules and regulations. Additionally, the two polarized factions which comprise the Board's membership have been a major impediment to any real progress on coal mine health and safety issues. Since 1982, the only issues upon which these two factions, under the additional impediment of the committee process, could agree have been amendments to preexisting Board rules and regulations governing searches for intoxicants; written reports of accidents; and the duties of mine foremen; and, new regulations governing record keeping of certified mine employees. In reality, the status of coal mine health and safety regulation in West Virginia is not much better than it was in 1977, when the Board of Coal Mine Health and Safety was created. Because this lackluster performance has, to a great extent, resulted from self-serving political posturing by Board members, while the lives and limbs of our state's coal miners hang in the balance, a major reorientation to the goal of coal mine health and safety by the Board is desperately needed.

In conclusion, the petitioners seek enforcement of the Board's mandatory duty to promulgate rules and regulations in response to properly reviewed coal mine fa-

**374**

talities and major causes of injury; enforcement of the Board's mandatory duty to promulgate rules and regulations governing the conformance of underground mining equipment to the height of the seam being mined; a requirement that the Board follow strictly the legislatively specified procedure for the promulgation of rules and regulations without additional procedure; and, such other relief as may be reasonable and just.

■■■ With respect to these requests, we find that the Board has not been diligent in the performance of its mandatory duties in its failure to conduct a formal vote following the review of coal mine fatalities and major causes of injury in order to determine whether a majority of the quorum present believed that promulgation of rules and regulations could not assist in preventing the recurrence of specific fatalities or major causes of injury; in its failure to promulgate rules and regulations in response to coal mine fatalities and major causes of injury; in its failure to publish reasons, in the form of findings of fact and conclusions of law, for determining not to promulgate rules and regulations in response to coal mine fatalities and major causes of injury; in its failure to promulgate rules and regulations governing the conformance of underground mining equipment to the height of the coal seam being mined; in its consideration of proposed procedural rules and regulations governing Board operations which contain provisions that will obstruct or delay the promulgation of health and safety rules and regulations; in its creation of committees designed to obstruct the Administrator in the performance of his mandatory duties; in its failure to properly consider member suggestions of subject areas for regulation; and, in its failure to employ sufficient support personnel to comply with its mandatory duties.

In connection with these dilatory activities, we conclude that West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), requires the Board to conduct a formal vote to determine whether the promulgation of rules and regulations could assist in pre- venting the recurrence of fatalities and major causes of injury properly reviewed; that West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), requires the Director of the Department of Mines, as Chairman of the Board of Coal Mine Health and Safety, to provide the Board with all available reports regarding all coal mine fatalities within sixty days of each fatality, and requires the Board to promulgate such rules and regulations as could assist in preventing the recurrence of specific fatalities, unless a majority of the quorum present determines that no possible rules or regulations can be promulgated which could assist in preventing the specific types of fatalities or major causes of injury reviewed, within one hundred twenty days of such review; that West Virginia Code § 22–2A–4(e) (1981 Replacement Vol.), requires the Board to conduct a detailed annual review, between the first day of January and the first day of July, of the major causes of coal mining injuries during the previous calendar year, and to promulgate such rules and regulations during this six month time period as are necessary to prevent the recurrence of the major causes of coal mining injuries reviewed, unless a majority of the quorum present determines that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the major causes of injury reviewed; that West Virginia Code § 22–2A–4(c)(7) (1981 Replacement Vol.), requires the Board to publish, within a reasonable time, its reasons, in the form of findings of fact and conclusions of law, for determining that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the specific type of fatality or major cause of injury reviewed; that West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.), do not contemplate subcommittee participation in the Administrator's preparation of reports on suggestions, draft regulations, and finding of fact and conclusions of law for proposed regulations; that West Virginia Code §§ 22–2–28a and 22–2A–4(a) (1981 Replacement Vol.), require the Board to promulgate such rules and regulations as are necessary to effectuate the legislative man-

date that underground mining equipment conform to the height of the seam being mined; that, under the regulatory scheme designed by the Legislature, any procedural rule or regulation that either conflicts with a legislatively mandated procedural rule or otherwise obstructs or delays the promulgation of health and safety rules and regulations is invalid; that, under West Virginia Code § 22–2A–4a(a)(1) (1983 Supp.), member suggestions for regulation in the form of broad categories are sufficient; and, that, under West Virginia Code §§ 22–2A–3(a)(6), 22–2A–4(d), and 22–2A–4b(c) (1981 Replacement Vol. & 1983 Supp.), the Director of the Department of Mines and the Health and Safety Administrator have mandatory duties to provide such support personnel as the Board determines to be necessary.

For the foregoing reasons, we grant a writ of mandamus compelling the respondents, the Health and Safety Administrator; the Chairman of the Board of Coal Mine Health and Safety; and, the Board of Coal Mine Health and Safety, to (1) review each and every fatality which has occurred since the Board's restructuring in 1982, and conduct a formal vote to determine if no possible rule or regulation can be promulgated which could assist in preventing the recurrence of each fatality reviewed; (2) review the major causes of injuries which have occurred since the Board's restructuring in 1982, and conduct a formal vote to determine if no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the major causes of injury reviewed; (3) promulgate such rules and regulations as could assist in preventing the recurrence of specific fatalities, unless a majority of the quorum present determine that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the specific type of fatality reviewed; (4) promulgate such rules and regulations, by the first day of July, as could assist in preventing the major causes of injury reviewed, unless a majority of the quorum present determines that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the major causes of injury reviewed; (5) publish, within a reasonable time, its reasons, in the form of findings of fact and conclusions of law, for determining that no possible rule or regulation can be promulgated which could assist in preventing the recurrence of the specific type of fatality or major cause of injury reviewed; (6) dissolve existing committees designed to obstruct the Administrator in the performance of his mandatory duties under West Virginia Code §§ 22–2A–4a(a)(2), (3), and (6) (1983 Supp.); (7) promulgate such rules and regulations necessary to effectuate the legislative mandate that underground mining equipment conform to the height of the seam being mined, pursuant to West Virginia Code §§ 22–2–28a and 22–2A–4(a) (1981 Replacement Vol.); (8) reevaluate the proposed procedural rules and regulations in light of this holding that such rules and regulations are invalid to the extent that they conflict with a legislatively mandated procedural rule or otherwise obstruct or delay the promulgation of health and safety rules and regulations; (9) conduct a formal vote point by point, after the presentation of reports prepared by the Administrator, to determine whether the Administrator shall prepare draft regulations in those subject areas suggested by Osborne that have not previously been submitted to a formal vote; (10) convene a meeting of the entire membership[11] of the Board of Coal Mine Health and Safety without delay, pursuant to West Virginia Code § 22–2A–3(d) (1983 Supp.), providing that, "The board *shall* meet ... as may be necessary" (Emphasis added), which shall not adjourn except from day to day, with the exception of Saturday and Sunday, with each day constituting a separate meeting, until it has discharged its mandatory duties under the preceding nine subsections; and, (11) employ, if necessary, and make available suf-

---

11. With respect to this requirement that the entire membership of the Board meet, we note that, under West Virginia Code § 22–2A–3(d) (1983 Supp.), "When a member shall fail to appear at three consecutive meetings .... such member shall be removed by the governor unless good cause for absences is shown."

ficient staff, under West Virginia Code §§ 22–2A–3(a)(6), 22–2A–4(d), and 22–2A–4b(c) (1981 Replacement Vol. & 1983 Supp.), as is necessary to comply fully and expeditiously with these mandates.

Writ As Moulded Issued.