JOHN F. GLOVER *v.* EDGAR B. SIMS, AUDITOR OF WEST
VIRGINIA

(No. 8962)

Submitted June 13, 1939. Decided June 20, 1939.

*Ritchie, Hill & Thomas* and *Chas. Ritchie,* for petitioner.
*Clarence W. Meadows,* Attorney General and *Ira J. Partlow,* Assistant Attorney General, for respondent.

MAXWELL, JUDGE:

By this original jurisdiction proceeding in mandamus, the relator, John F. Glover, seeks to compel respondent, the Honorable Edgar B. Sims, Auditor of the State of West Virginia, to issue in favor of the relator a warrant on the State Treasurer for the sum of $2,794.55, in conformity with a requisition which has been made on the Auditor by the West Virginia Board of Control.

The legislature of 1937 appropriated for the fiscal year 1937-38 the sum of $75,000.00 and for the fiscal year 1938-39 $55,000.00 "for full payment of all outstanding open accounts of the Athletic Department of West Virginia University, to be expended as the Board of Control may direct." Acts 1937, Chapter 1, Title 2, Section 1, Item 39, Account No. 300. No disbursements having been made under that appropriation, the legislature of 1939 gave the matter further attention and made another enactment denominated House Bill 405, respecting the same subject matter. By this later enactment, the legislature re-appropriated the sums set forth above in the 1937 appropriation act. In addition, the later act recites in detail the various accounts which are covered by the appropriation, among which is the relator's claim herein involved. The 1939 act also contains the following legislative declaration: "It is the finding of the Legislature: That the above listed unpaid accounts and obligations in relation to athletic activities at West Virginia University represent indebtedness authorized and incurred (largely during the years 1930-1933) by the regularly constituted authorities of the University; That these accounts were not paid and the deficit thus created because athletic income, actually available for the payment of these accounts at that time, was diverted to pay interest and principal on outstanding bonds of The West Virginia University Stadium Corpora-

tion; That the legislature of one thousand nine hundred thirty-seven approved these obligations and accounts and appropriated the necessary sum to pay said obligations and accounts in full, but that the same have not yet been paid, because of prior uncertainties; That said appropriation remains unexpended in the treasury of the state and can be used without affecting the biennial budget now pending before the Legislature of one thousand nine hundred thirty-nine; That this amendment and reenactment of the said appropriation of one thousand nine hundred thirty-seven is not a new appropriation and can be made independently of the pending budget bill for the ensuing biennium and is made for the purpose of clarifying the act of one thousand nine hundred thirty-seven."

A legislative finding of fact should be accepted by the courts unless there is strong reason for rejecting it. *Wilson* v. *County Court,* 114 W. Va. 603, 607, 175 S. E. 224. Consider, *Lusher* v. *Scites,* 4 W. Va. 11. The declaration of the legislature here presented being factual and not juristical, there is no basis for application of the rule in *Berry* v. *Fox,* 114 W. Va. 513, 172 S. E. 896, that a pronouncement of the latter type is not conclusive.

From the record it appears that the relator's claim is for the price of commodities and services furnished by him for use in connection with the athletic activities of the West Virginia University, and that such commodities and services were furnished on orders of the University's director of athletics. The relator is a printer and his account is made up of items for tickets, schedules, cards and the like.

In 1924, there was organized the West Virginia University Stadium Corporation for the purpose of sponsoring the erection of a stadium on state land at the University. The underlying plan was that the enterprise would be financed through contributions of subscribers and the receipts arising from athletic contests. That corporation had nothing to do with obligations incident to the operation of the athletic department of the University. It appears, however, from the legislative factual finding

above quoted that athletic department funds which would have been available for the relator's claim and others like situated, were "diverted to pay interest and principal on outstanding bonds of the West Virginia University Stadium Corporation."

It in no wise appearing from the record that the relator's claim is a debt of the stadium corporation, there can be no basis for the proposition urged by the Auditor that the paying of this debt with state funds will constitute a violation of Section 6 of Article X of the State Constitution, which provides, among other things, that the state shall never assume, nor become responsible for the debts or liabilities of any county, city, township, corporation or person.

Further, it is urged by the respondent that if the relator's claim is not a debt of the stadium corporation but is in fact an account against the athletic department of the University, the legislature was without authority to authorize the payment of the account, by reason of Section 38 of Article VI of the Constitution which provides that the legislature shall not "authorize the payment of any claim or part thereof, hereafter created against the State, under any agreement or contract made, without express authority of law; and all such unauthorized agreements shall be null and void." In our opinion, this constitutional provision cannot be invoked for the purpose here attempted. The inhibition inveighs against obligations arising out of unauthorized contracts and agreements. Such is not the situation at hand. The relator's claim arose as an incidental expense of the athletic department in the administration of the affairs under its supervision. And then, too, the relator's claim and others in the same category, as appears from the record, have been approved by the State Board of Control, which is vested by law with the authority and responsibility of providing supplies for the various state institutions. Code, 25-1-15. In the case of *Slack* v. *Jacob,* 8 W. Va. 612, 633, this Court, discussing the identical constitutional clause here under discussion, said: "According to our under-

standing, that part of the said thirty-eighth section only applies to claims based on agreements or contracts made without express authority of law, and the section declares such unauthorized agreements null and void. It does not apply to claims predicated upon simple justice and right, and never was intended to prevent the Legislature from voluntarily doing justice and right where the claim is not predicated on a contract made without express authority of law." Consult, *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A. (N. S.) 83, Ann. Cas. 1914 B, 1278.

Emphatically are we impressed that the legislative action of 1937 and 1939 making the appropriations to cover the plaintiff's claim and others against the athletic department of the University, was based on "simple justice and right", because the underlying facts are declaratory of a strong moral obligation of the state to pay these debts. Loyal West Virginia citizens, as friends and alumni of the University, undertook in magnanimous spirit to foster the construction of a stadium for athletic events and other appropriate uses at the University. The building program was consummated, and a great and valuable structure now stands on the campus. This structure is state property free and acquit of all liens and claims, regardless of the continuing obligation of some of the underwriters of the undertaking. The state is the beneficiary of the whole project. No one can successfully assert that a proper athletic program is not appropriate to a great educational institution. The physical welfare of young men and women cannot with propriety be ignored. Education is a proper function of state government and includes appropriate physical development as well as mental and moral. Granting that mistakes may have been made throughout the land in over-emphasis of inter-collegiate athletic activities, such fact can in no degree overshadow the wholesome importance of properly regulated and directed inter-collegiate and intra-mural athletic programs. The thousands of West Virginia boys and girls who through the years become students at the West

Virginia University have better opportunity for well-rounded education by reason of the stadium's being on the campus. The outstanding fact is that the stadium was built and is now a valuable asset of the State of West Virginia. The legislature has properly visualized the situation, in the light of its cognizance of the fact that through the trying years of 1930 to 1933 and thereabout the athletic department of the University, because of decreased revenue, was unable to discharge both the maturing obligations and interest charges (indebtedness of the stadium corporation) arising from the construction of the stadium, and the current expenses of the athletic department, and that funds which might have been applied to the latter were therefore diverted to the former. Actuated, consequently, by a spirit of justice and fair play, the legislature has with propriety made appropriations to cover the debts of the athletic department owing by it to persons and firms who in good faith furnished goods and services to the department.

By reason of the foregoing, a peremptory writ of mandamus will be awarded.

*Writ awarded.*