348 S.E.2d 299

**H. John ROGERS**

**v.**

**Ken HECHLER, Secretary of State; Ralph J. Bean, Jr., Chairman, State Election Commission; Allen S. Hammock, Barbara M. Ruley, and Patrick McDonald, Members, State Election Commission.**

**No. 16884.**

Supreme Court of Appeals
of West Virginia.

July 9, 1986.

H. John Rogers, New Martinsville, for appellant.

Atty. Gen. Charlie Brown, Asst. Atty. Gen. Marianne K. Hoover, Charleston, for appellee.

McGRAW, Justice:

The petitioner in this mandamus action, H. John Rogers, citizen, taxpayer, and voter, seeks to compel state election officials to promulgate rules and regulations governing campaign expenditures. The respondents are Ken Hechler, Secretary of State; Ralph J. Bean, Jr., Chairman of the State Election Commission; and, Allan S.

Hammock, Barbara M. Ruley, and Patrick McDonald, members of the State Election Commission. Following brief discussion of the appropriateness of mandamus, we will address the substantive issues presented.

■ A threshold issue in any mandamus action is whether it is an appropriate vehicle for the relief sought. The general rule is that, "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a clear legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969); *see also* Syl., *State ex rel. Ruddlesden v. Roberts,* 175 W.Va. 161, 332 S.E.2d 122 (1985); Syl., *Oakley v. Gainer,* 175 W.Va. 115, 331 S.E.2d 846 (1985); *Allen v. Human Rights Commission,* 174 W.Va. 139, 324 S.E.2d 99, 105 (1984), and cases cited therein; *Reed v. Hansbarger,* 173 W.Va. 258, 314 S.E.2d 616, 619–20 (1984), and cases cited therein.

■ With respect to the petitioner's standing to seek enforcement of election laws regarding the promulgation of rules and regulations governing campaign expenditures, this Court held in Syllabus Point 3 of *Myers v. Barte,* 167 W.Va. 194, 279 S.E.2d 406 (1981), "Where the right sought to be enforced is a public one, mandamus can be sought by any citizen, taxpayer or voter." *See also Smith v. West Virginia State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680, 683 (1982); Syl. pt. 1, *State ex rel. Brotherton v. Moore,* 159 W.Va. 934, 230 S.E.2d 638 (1976); *State ex rel. Brotherton v. Blankenship,* 158 W.Va. 390, 396, 214 S.E.2d 467, 474 (1975); *DeLardas v. County Court,* 155 W.Va. 776, 779, 186 S.E.2d 847, 850 (1972); Syl. pt. 2, *State ex rel. West Virginia Lodge, Fraternal Order of Police v. City of Charleston,* 133 W.Va. 420, 56 S.E.2d 763 (1949); Syl. pt. 3, *Prichard v. DeVan,* 114 W.Va. 509, 172 S.E. 711 (1934); Syl. pt. 2, *State ex rel. White v. Mingo County Court,* 86 W.Va. 517, 103 S.E. 368 (1920); Syl. pt. 1, *Frantz v. Wyoming County Court,* 69 W.Va. 734, 73 S.E. 328 (1911);

Syl. pt. 2, *State ex rel. Matheny v. County Court,* 47 W.Va. 672, 35 S.E. 959 (1900); Syl. pt. 3, *Spilman v. City of Parkersburg,* 35 W.Va. 605, 14 S.E. 279 (1891). Moreover, this Court has consistently recognized the "special public concern with insuring the regularity of elections" and that "citizens, taxpayers and voters have sufficient interest in such matters to bring actions in mandamus to compel election officials to discharge their duties in a lawful and proper manner." *State ex rel. Alsop v. McCartney,* 159 W.Va. 829, 838 n. 7, 228 S.E.2d 278, 283 n. 7 (1976); *see also White v. Manchin,* 173 W.Va. 526, 318 S.E.2d 470, 477 (1984); Syl. pt. 1, *State ex rel. Booth v. Board of Ballot Commissioners,* 156 W.Va. 657, 196 S.E.2d 299 (1972); Syl. pt. 1, *State ex rel. Baker v. Bailey,* 152 W.Va. 400, 163 S.E.2d 873 (1968); Syl. pt. 2, *State ex rel. Zickefoose v. West,* 145 W.Va. 498, 116 S.E.2d 398 (1960), *overruled on other grounds,* Syl. pt. 12, *State ex rel. Booth v. Board of Ballot Commissioners, supra;* Syl. pt. 1, *State ex rel. Pack v. Karnes,* 83 W.Va. 14, 97 S.E. 302 (1918), *overruled on other grounds,* Syl. pt. 12, *State ex rel. Booth v. Board of Ballot Commissioners, supra;* Syl., *State ex rel. Heironimus v. Town of Davis,* 76 W.Va. 587, 85 S.E. 779 (1915). This special public concern with the integrity of the electoral process is also reflected in West Virginia Code § 3-1-45 (1979 Replacement Vol.), which provides, in pertinent part, that "Any officer or person, upon whom any duty is devolved by this chapter, may be compelled to perform the same by writ of mandamus."

■ With respect to the existence of an adequate alternative remedy, this Court held in Syllabus Point 5 of *Hardin v. Fogelsong,* 117 W.Va. 544, 186 S.E. 308 (1936), "Mandamus will not be denied on the ground that there is another remedy unless such other remedy is equally convenient, beneficial, and effective." *See also West Virginia Citizens Action Group v. Daley,* 174 W.Va. 299, 324 S.E.2d 713, 716 (1984); *Allen v. Human Rights Commission,* 329 S.E.2d at 106, and cases cited therein; *Woodruff v. Board of Trustees of Cabell Huntington Hospital,* 173 W.Va. 604, 319 S.E.2d 372, 376 (1984). The re-

spondents in this case suggest that the relief sought by the petitioner can only be obtained through the Legislature. This Court has repeatedly held, however, that "A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty." Syl. pt. 4, *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612 (1939); *see also Allen v. Human Rights Commission*, 174 W.Va. at 147–148, n. 10, 324 S.E.2d at 107–08 n. 10, and cases therein; *Reed v. Hansbarger*, 173 W.Va. at 262, 314 S.E.2d at 620, and cases cited therein. Such nondiscretionary duties include the promulgation of rules and regulations pursuant to legislative mandate. *See, e.g., United Mine Workers of America v. Scott*, 173 W.Va. 356, 315 S.E.2d 614, 621–22 (1984); *County of Ramsey v. Stevens*, 283 N.W.2d 918, 924–25 (Minn.1979); *Stine v. Kansas City*, 458 S.W.2d 601, 609–10 (Mo.Ct.App.1970); *Richmond Funeral Directors' Ass'n v. Groth*, 202 Va. 792, 797, 120 S.E.2d 467, 471 (1961). The petitioner's contention is that the Legislature has already spoken, but that the respondents are not heeding its call. Therefore, resort to a legislative remedy is not an adequate avenue of relief in this action.

■ With respect to the ascertainment of the existence of legal duty, one guidepost is unquestionably that, "The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syl. pt. 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969); *see also Allen v. Human Rights Commission*, 174 W.Va. at 147–148, n. 10, 324 S.E.2d at 108 n. 10, and cases therein; *United Mine Workers of America v. Scott*, 173 W.Va. at 363, 315 S.E.2d at 621, and cases cited therein. With this consideration in mind, we now examine the statutes in question.

West Virginia Code § 3–1–1 (1979 Replacement Vol.) provides that, "This chapter shall constitute and may be cited as the 'West Virginia Election Code' and contemplates and comprehends a code of laws for the establishment, administration and regulation of elections and election procedures in the State of West Virginia." The provisions of the West Virginia Election Code governing the conduct and administration of elections are enacted pursuant to West Virginia Constitution art. IV, § 11, which provides:

> The legislature shall prescribe the manner of conducting and making returns of elections, and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption and fraud in voting, counting the vote, ascertaining or declaring the result, or fraud in any manner upon the ballot.

In *Halstead v. Rader*, 27 W.Va. 806, 808 (1886), this Court observed that, "This provision is mandatory and plenary, and requires the legislature to prescribe all reasonable laws deemed necessary or proper for the prevention of fraud, securing the purity of elections and ascertaining the results." The mandatory nature of duty of the Legislature under this constitutional provision to enact all laws objectively necessary to ensure fair elections was emphatically stated in *Halstead v. Rader*, 27 W.Va. at 809:

> [N]ot content to leave the exercise of the power inherent in the legislature and not denied to it, at the direction of the legislature, the Constitution commands, that it *shall* pass all laws necessary and proper to prevent fraud and secure the purity of elections and returns. No law which is unreasonable can be necessary or proper, and therefore no such law can be regarded as authorized by the Constitution or the general powers of the legislature. But all laws, which are deemed not only necessary but proper for the purpose of fair and honest elections and ascertaining their returns, the Constitution commands the legislature to pass.

Although enactment and amendment of election statutes pursuant to this constitutional mandate proved adequate for almost eighty years, the Legislature, in 1941, faced with an increasingly complex political and electoral system, as part of a comprehensive "Permanent Registration Law," empowered the Secretary of State, for the first time, to "make, amend and rescind

such rules, regulations and orders as may be necessary to carry out the policy of the Legislature, as contained in this article." 1941 W.Va. Acts ch. 43, § 13. Assistance in the performance of these new obligations of the Secretary of State with respect to the promulgation of rules and regulations needed to vindicate legislatively prescribed electoral policies was provided through the creation of "The State Election Commission," which was authorized to "recommend policies and practices to the secretary of state, relating to his duties as registration official (for voting) and election officer, imposed by law" and to "consider and study the election practices of other jurisdictions, with a view to determining the techniques used in eliminating fraud in elections and in simplifying election procedure." 1941 W.Va. Acts ch. 43, §§ 12(1) and (3). This administrative structure for the promulgation of election rules and regulations has been retained despite subsequent amendment to the West Virginia Election Code.

West Virginia Code § 3–1A–6 (1979 Replacement Vol.) currently provides that, "The secretary of state shall be the chief election official of the State. He shall have authority, after consultation with the state election commission, of which he is a member, to make, amend and rescind such rules, regulations and orders as may be necessary to carry out the policy of the legislature, as contained in this chapter." Clearly, as the respondents suggest, the language of this provision is permissive and not mandatory. West Virginia Code § 3–1A–6 (1979 Replacement Vol.) further provides, however, that, "It shall be the duty of all election officials ... to abide by such rules, regulations and orders, *which shall include* ... Any ... rules, regulations or directions necessary to standardize and make effective the administration of the provisions of this chapter." [Emphasis added]. Clearly, as the petitioner suggests, the language of this provision is mandatory and not permissive.

West Virginia Constitution art. IV, § 11 mandates that, "The legislature ... shall pass such laws as may be necessary and proper to prevent ... corruption and fraud in voting...." Currently, this is achieved through the enactment of broad legislative policies embodied in a skeletal statutory scheme. These broad legislative policies are insufficient, however, to meet the constitutional demand that the Legislature pass all laws as may be necessary and proper to prevent corruption and fraud in elections. Recognizing that a detailed system of regulation is essential if its broad policies were to have any appreciable impact upon the conduct and administration of elections, the Legislature charged the Secretary of State with filling in the interstices of the statutory framework. Mandating that, at a minimum, the rules and regulations promulgated by the Secretary of State include those "necessary to standardize and make effective the administration of the provisions of this chapter," West Virginia Code § 3–1A–6 (1979 Replacement Vol.), the Legislature was shifting part of its constitutional burden to the Secretary of State. This adds an important constitutional dimension to the Secretary of State's mandatory duty to promulgate rules and regulations necessary to effectuate broad legislative policies regarding the electoral process.

One of the oldest legislatively prescribed electoral policies in this State is the strict regulation of permissible campaign expenditures. Over ninety-eight years ago, the Legislature enacted a law prohibiting the promise, payment, solicitation, or acceptance of money, employment or any other valuable consideration in order to induce a voter to vote, not to vote, to vote for a particular candidate, or not to vote for a particular candidate. 1908 W.Va. Act Ex. Sess. ch. 22, § 1. Violation of this law was deemed a misdemeanor punishable by "imprisonment in the county jail for a term of not less than six months or more than one year, at the discretion of the court, and [a] fine[ ] [of] not more than one thousand dollars." 1908 W.Va. Acts Ex. Sess. ch. 22, § 1. A proviso to this legislation, however, stated that it was not intended to apply to certain "proper expenses." 1908 W.Va. Acts Ex. Sess. ch. 22, § 1. The definition of what constituted "proper expenses" was

strictly limited to include "only" the following items:

First. For the personal traveling expenses of the candidate.

Second. For the reasonable rent of hall or room for the delivery of speeches relative to principles of candidates in any pending election.

Third. For the payment of reasonable compensations to public speakers and musicians at public meetings and their necessary traveling expenses.

Fourth. Printing and distribution of lists of candidates or sample tickets, speeches or addresses by pamphlets, newspapers or circulars relative to candidates or political issues or principles, cards, handbills, posters or announcements.

Fifth. For copying and classifying poll lists.

Sixth. For making canvasses of voters.

Seventh. For expressage or freight or charge for other like purposes, and for postage, telegraph, telephone, or other public messenger service.

Eighth. For reasonable clerk hire at the headquarters or offices of campaign committees, or at the office of the candidates.

1908 W.Va. Acts Ex. Sess. ch. 22, § 1. Any other campaign expenditure, such as for transporting voters to and from the polls, was, by legislative definition, improper, and if made in order to induce a voter to vote, not to vote, to vote for a particular candidate, or not to vote for a particular candidate, would be a violation of the campaign expenditure law and punishable as a misdemeanor.

Over the years, several significant amendments to the campaign expenditure law have been made. Some items defined as permissible campaign expenditures have been dropped and others have been added. For example, in 1915, the Legislature added, "For conveying infirm or disabled voters to and from the polls," and, in 1980, the Legislature added, "For conducting public opinion poll or polls," to the list of permissible campaign expenditures. The two most important changes, however, to the campaign expenditure law, both occurred in 1915, only seven years after its initial passage. First, beginning in 1915, improper campaign expenditure became a per se violation of the election law. The statute was amended to provide that, "No candidate, financial agent or treasurer of a political committee, shall pay, give or lend, or agree to pay, give or lend, either directly or indirectly, any money or other thing of value for any election expenses, except for [certain specifically enumerated purposes]." 1915 W.Va. Acts. ch. 27, § 10. The motive for the expenditure was no longer relevant. Second, beginning in 1915, only amounts "proper and reasonable and fairly commensurate with the services rendered" could be incurred and reimbursed for those types of campaign expenses specifically enumerated. 1915 W.Va. Acts ch. 27, § 10. Obviously, payment of an unreasonable amount, such as ten times the normal rate for a room at a hotel in which to hold a political rally, could be used as a guise for purchase of the innkeeper's vote.

Following the significant changes in 1915, the campaign expenditure law has remained relatively stable over the past seventy-one years. West Virginia Code § 3–8–9 (Supp.1985), currently provides, in pertinent part, that:

(a) No candidate, financial agent, or treasurer of a political party committee, shall pay, give or lend, either directly or indirectly, any money or other thing of value for any election expenses, except for the following purposes:

(1) For rent, maintenance and furnishing of offices to be used as political headquarters and for the payment of necessary clerks, stenographers, typists, janitors and messengers actually employed therein;

(2) In the case of a candidate who does not maintain a headquarters, for reasonable office expenses and for the payment of necessary clerks, stenographers and typists, actually employed;

(3) For printing and distributing books, pamphlets, circulars and other printed matter and radio and television broadcasting and painting, printing and

posting signs, banners and other advertisements, all relating to political issues and candidates;

(4) For renting and decorating halls for public meetings and political conventions, for advertising public meetings, and for the payment of traveling expenses of speakers and musicians at such meetings;

(5) For the necessary traveling and hotel expenses of candidates, political agents and committees, and for stationery, postage, telegrams, telephone, express, freight and public messenger service;

(6) For preparing, circulating and filing petitions for nomination of candidates;

(7) For examining the lists of registered voters, securing copies thereof, investigating the right to vote of the person listed therein, and conducting proceedings to prevent unlawful registration or voting;

(8) For conveying voters to and from the polls;

(9) For securing publication in newspapers and by radio and television broadcasting of documents, articles, speeches, arguments and any information relating to any political issue, candidate, or question or proposition, submitted to a vote;

(10) For conducting public opinion poll or polls. For the purpose of this section, the phrase "conducting of public opinion poll or polls" shall mean and be limited to the gathering, collection, collation, and evaluation of information reflecting public opinion, needs and preferences as to any candidate, group of candidates, party, issue or issues. No such poll shall be deceptively designed or intentionally conducted in a manner calculated to advocate the election or defeat of any candidate or group of candidates or calculated to influence any person or persons so polled to vote for or against any candidate, group of candidates, proposition or other manner to be voted on by the public at any election: Provided, that nothing herein shall prevent the use of the results of any such poll or polls to further, promote or enhance the election of any candidate or group of candidates or the approval or defeat of any proposition or other matter to be voted on by the public at any election; and

(11) For legitimate advertising agency services, including commissions, in connection with any campaign activity for which payment is authorized by subdivisions three, four, five, six, seven, nine and ten of this subsection.

(b) Every liability incurred and payment made shall be at a rate and for a total amount which is proper and reasonable and fairly commensurate with the services rendered.

The penalty for violation of this provision is found in West Virginia Code § 3-9-23 (1979 Replacement Vol.), which provides that:

Any person who shall commit any act made an offense by any provision of this chapter, for which no penalty or punishment is prescribed by any other provision contained therein, or any person who shall fail to perform any duty prescribed therein, or any person who shall fail to perform any duty prescribed therein which has not been specifically made an offense, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars, or, in the discretion of the court, be confined in jail for not more than one year.

Two aspects of the current campaign expenditure law, which were initially enacted in 1915, are particularly noteworthy. First, it is a violation of West Virginia Code § 3-8-9(a) (Supp.1985) for any candidate, financial agent, or treasurer of a political party committee to pay, give, or lend, either directly or indirectly, any money or other thing of value for any election expenses, for any purpose other than those specifically enumerated therein. Second, it is a violation of West Virginia Code § 3-8-9(b) (Supp.1985) for any candidate, financial agent, or treasurer of a political party committee to pay, give, or lend, or to incur liability to pay, give, or lend, either directly or indirectly, any money or other thing of value for any election expenses, unless "at

a rate and for a total amount which is proper and reasonable and fairly commensurate with the services rendered."

Legislative reliance upon self-regulation for efficacious enforcement of the campaign expenditure law would have displayed considerable political naivete. Thus, concurrent with initial passage of the campaign expenditure law in 1908, the Legislature enacted several campaign expenditure reporting requirements. *See* 1908 W.Va. Acts Ex. Sess. ch. 22, §§ 7–15. For example, section seven of the 1908 Act provided that, "Every person who shall be a candidate ... at any primary election ... shall within thirty days after the election ... make out and file ... a statement in writing ... setting forth in detail all sums of money contributed, disbursed, expended or promised ... and showing the dates when, and the persons to whom, and the purpose for which all such sums were paid, expended, or promised." Over the years, legislative refinement of campaign expenditure reporting requirements has taken place. The thrust of such reporting requirements, however, has remained relatively constant.

West Virginia Code § 3–8–2 (1979 Replacement Vol.) currently provides that:

> Except for candidates for party committeemen and committeewomen, in primary and other elections, all candidates for nomination or election and all persons or organizations of any kind advocating or opposing a nomination, election or defeat of any issue, thing or item to be voted upon, shall keep records of receipts and expenditures which are made for political purposes. All such receipts and expenditures shall be subject to regulation by the provisions of this article. Verified financial statements of such records and expenditures shall be made and filed as public records by all candidates and by their financial agents, representatives, or any person acting for and on behalf of any candidate, or the passage or defeat of any issue, thing or item to be voted upon, and by the treasurers of all political party committees.

West Virginia Code § 3–8–5 (Supp.1985), further mandates that "detailed accounts of ... all expenditures and disbursements made ... by [every] candidate, financial agent, person, association or organization or committee, for political purposes" be maintained, and that "[e]very person ... required to keep detailed accounts ... file ... a detailed itemized statement ... according to [specified] provisions and times." With respect to the expenditure content of such financial statements, West Virginia Code § 3–8–5a(h) (Supp.1985) provides, "Each financial statement ... shall show ... The first name, middle initial, if any, and the last name, residence and mailing address in the case of an individual, or the full name and mailing address of each firm, association or committee to whom each expenditure was made or liability incurred, together with the amount and purpose of each expenditure or liability incurred and the date of each transaction."

The Secretary of State is intimately involved in the administration and enforcement of our campaign financial disclosure laws. West Virginia Code § 3–8–5b (1979 Replacement Vol.), for example, provides that, "The sworn financial statements provided for in sections five and five-a [§§ 3–8–5 and 3–8–5a] shall be filed with the secretary of state by candidates for state and other offices to be nominated or elected by the voters of a political subdivision greater than a county...." More importantly, however, West Virginia Code § 3–8–6 (1979 Replacement Vol.) provides that, "Blank forms for all financial statements required under this article shall be prepared by the secretary of state, and copies thereof, together with a copy of this article, shall be furnished through the county clerk or otherwise, as the secretary of state may deem expedient, to all treasurers of political committees, to all political financial agents, and to all candidates for nomination or election to any office, upon the filing of a petition or announcement for nomination, and to all other persons required by law to file such statements who shall apply therefor."

■ Although, with respect to the reporting of campaign expenditures, West Virginia Code § 3–8–5a(h) (Supp.1985) man-

dates only that the name, address, amount, purpose, and date of each expenditure be reported on the forms prepared by the Secretary of State, it is clear that a more detailed summary of the actual service rendered is necessary in order to fulfill the requirement under West Virginia Code § 3–8–9(b) (Supp.1985) that such expenditures are "proper and reasonable and fairly commensurate with the services rendered." There are essentially three elements to the provision of sufficient information for determination of whether an election expense is "at a rate and for a total amount which is proper and reasonable and fairly commensurate with the services rendered" under West Virginia Code § 3–8–9(b) (Supp. 1985). First, the promulgation of rules and regulations governing "rate[s]" of renumeration which are proper, reasonable, and fairly commensurate with the services rendered is essential. Second, the promulgation of rules and regulations concerning itemization of services rendered by individuals or corporations rendering such services is essential. Finally, the promulgation of rules and regulations mandating more detailed summary of actual services rendered in campaign financial disclosure statements is essential.

Of the eleven categories of permissible campaign expenditures found in West Virginia Code § 3–8–9(a) (Supp.1985), the two most susceptible to abuse are, "For ... distributing books, pamphlets, circulars and other printed matter ..." and "For conveying voters to and from the polls." Obviously, payment of two hundred dollars to a voter for distribution of ten leaflets on a street corner or for transportation of the voter and his or her spouse to the polls is not proper, reasonable, or fairly commensurate with the services rendered. It is pure and simple vote-buying. In the absence of rules and regulations, however, governing the rate of renumeration, the itemization of services rendered, and the disclosure of such information in statements of campaign finances, a void is created within which the unscrupulous may conceal their antidemocratic activities behind a facade of official propriety. These types of rules and regulations are unquestionably "necessary

to standardize and make effective the administration of the provisions of [the West Virginia Election Code]" under West Virginia Code § 3–1A–6 (1979 Replacement Vol.), and fall within the scope of the respondents' mandatory regulatory duties.

West Virginia Code § 3–8–9(b) (Supp. 1985) addresses both the "rate" and "total amount" of liabilities incurred and payments made for services rendered candidates, financial agents, or treasurers of political party committees. Although the promulgation of rules and regulations mandating more detailed reporting of the actual services rendered would assist immeasurably in determinations of whether the "total amount" of such services is proper, reasonable, and fairly commensurate with the services rendered, rules and regulations governing appropriate "rate[s]" of renumeration for certain types of compensable services are also necessary.

Objective criteria exist in the West Virginia Minimum Wage and Maximum Hours Law and the West Virginia Election Code for the promulgation of rules and regulations establishing permissible rates of renumeration for distributors of campaign literature and for transporters of voters to and from the polls. West Virginia Code § 21–5C–2 (1985 Replacement Vol.) provides that, "[E]very employer shall pay to each of his employees wages at a rate not less than three dollars and five cents per hour." West Virginia Code § 3–1–44 (Supp.1985) provides that, "Each commissioner of election and poll clerk shall be allowed and paid a sum, to be fixed by the county commission ... not exceeding fifty dollars for his services at any one election...." The West Virginia Minimum Wage and Hours Law sets a minimum standard of reasonable renumeration and the West Virginia Election Code sets a maximum standard of reasonable renumeration for distributors of campaign literature, transporters of voters, and others who perform functions similar to those governmental functions performed by election commissioners or poll clerks on election day. Obviously, levels of actual renumeration for distributors of campaign literature, transporters of voters, and oth-

ers who perform functions similar to those governmental functions performed by election commissioners or poll clerks on election day would fall somewhere within this range of reasonableness, depending upon the quantity and quality of services rendered, with the exception of election workers who lose a day of regular employment who may be paid at their customary rate of hourly compensation.

In order to facilitate the provision of more detailed information in revised campaign financial disclosure statements, more detailed information from the providers of compensable services is necessary. With respect to determining whether liabilities incurred and payments made for the distribution of campaign literature are proper, reasonable, and fairly commensurate with the services rendered, information concerning time of distribution, place of distribution, and amount of materials distributed is needed. In order to determine whether liabilities incurred and payments made for the transportation of voters to and from the polls are proper, reasonable, and fairly commensurate with the services rendered, information concerning number of voters transported, names of voters transported, mileage incurred in the transportation of voters, and the fees ordinarily charged by licensed common carriers employed to perform such service is needed. In the interest of standardization, it is necessary that the Secretary of State, in consultation with the State Election Commission, develop forms on which individuals or organizations rendering such services can itemize in precise detail the amount and character of the services rendered. These forms, in turn, can be used in completion of campaign financial disclosure statements by candidates, financial agents, and treasurers of political party committees.

As previously mentioned, West Virginia Code § 3–8–6 (1979 Replacement Vol.) mandates that, "Blank forms for all financial statements required under this article shall be prepared by the secretary of state ..." Obviously, the provision of name, address, amount, purpose, and date of each expenditure falls short of providing sufficient information concerning whether the rate and total amount of each expenditure is proper, reasonable, and fairly commensurate with the services rendered under West Virginia Code § 3–8–9(b) (Supp.1985). Simply by mandating a more detailed summary of the amount and character of the services rendered on campaign financial disclosure statements, a thoroughly unobtrusive requirement, a much more accurate assessment of whether a reimbursement for services is proper, reasonable, and fairly commensurate can be made. Additionally, provision of such detailed information will significantly discourage the more frequent types of abuse that often plague our electoral process. Our election laws require that campaigns be conducted in a business-like fashion. Imposition of more rigorous reporting requirements with respect to the amount and character of services rendered in exchange for an expenditure of campaign funds is no more onerous than the ordinary bookkeeping essential to any entrepreneurial activity.

Accordingly, we hold that in order to achieve compliance with the mandatory duty under West Virginia Code § 3–1A–6 (1979 Replacement Vol.) to promulgate rules and regulations necessary to standardize and make effective the administration of the provisions of the West Virginia Election Code, particularly with respect to the enforcement and administration of West Virginia Code § 3–8–9(b) (Supp.1985), which provides that, "Every liability incurred and payment made shall be at a rate and for a total amount which is proper and reasonable and fairly commensurate with the services rendered," the Secretary of State, after consultation with the State Election Commission, has a mandatory duty to (1) promulgate rules and regulations governing rates of compensation which are proper, reasonable, and fairly commensurate with services rendered candidates, financial agents, or treasurers of political party committees; (2) promulgate rules and regulations governing itemization by providers of the amount and character of services rendered candidates, financial agents, or treasurers of political party committees; and, (3) promulgate rules and reg-

ulations governing detailed reporting on campaign financial disclosure forms of the amount and character of services rendered candidates, financial agents, or treasurers of political party committees. Therefore, we grant a writ of mandamus in this proceeding compelling the respondents to (1) promulgate rules and regulations governing rates of compensation which are proper, reasonable, and fairly commensurate with services rendered candidates, financial agents, or treasurers of political party committees; (2) promulgation rules and regulations governing itemization by providers of the amount and character of services rendered candidates, financial agents, or treasurers of political party committees; and, (3) promulgate rules and regulations governing detailed reporting on campaign financial disclosure forms of the amount and character of services rendered candidates, financial agents, or treasurers of political party committees.

Writ as moulded granted.

BROTHERTON, Justice dissenting:

I respectfully dissent from the Court's opinion in this matter.

I fully support the prevention of corruption and fraud in elections. The cost of running for public office in this State and in the United States is much too high. It is a cancer that could destroy our representative democracy. When the wealthy and those individuals who are able to solicit large monetary contributions are the only candidates who are capable of mounting successful campaigns, it is time to reform the election laws. However, the reformation must be accomplished within the limits of our Constitution and also through the use of common sense. If election law reform efforts run roughshod over our Constitution, the basic fabric of our government will be destroyed. I dissent because I believe West Virginia Code § 3–1A–6 (1979) is an unconstitutional delegation of legislative power to an executive officer, because I believe the majority improperly invaded the province of the legislature by making election law policy, and because I believe the system advocated by the majority

opens the door to abuses of power by the Secretary of State.

West Virginia Code § 3–1A–6 provides that the Secretary of State "shall have authority ... to make, amend and rescind such rules, regulations and orders as may be necessary to carry out the policy of the legislature, as contained in this chapter." The majority recognizes that this Code provision shifts part of the legislature's constitutional burden to the Secretary of State. See Maj. op. at 718. Despite this fact, the majority not only condones the legislature's action, they applaud it. They state that "a detailed system of regulation is essential." Id. I agree, but regulations may not be promulgated under the authority of an unconstitutional delegation of power.

The Constitution of West Virginia provides:

The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature.

W.Va. Const. art. V, § 1. This provision is part of the fundamental law of our State and must therefore be strictly construed and closely followed. Syl. pt. 1, *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981). The legislature has violated the separation of powers doctrine by giving the Secretary of State the authority to promulgate regulations concerning elections. The Constitution provides that:

The *legislature shall prescribe* the manner of conducting and making returns of elections, and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption or fraud in voting, counting the vote, ascertaining or declaring the result, or fraud in any manner, upon the ballot.

W.Va. Const. art. IV, § 11 (emphasis added). This Court has previously interpreted this section of the Constitution as follows:

This provision is mandatory and plenary, and *requires the legislature* to prescribe all reasonable laws deemed necessary or proper for the prevention of fraud, securing the priority of elections, and ascertaining the results....

... [A]ll laws, which are deemed not only necessary but, proper for the purpose of fair and honest elections and ascertaining their results, the Constitution *commands the legislature* to pass.

*Halstead v. Rader,* 27 W.Va. 806, 808–09 (1886) (emphasis added).

The Constitution and *Halstead* clearly indicate that the power to prescribe laws regulating elections is the exclusive province of the legislature. The Framers of our Constitution mandated that the power be purely legislative. An official of the executive branch of government may not perform a purely legislative function.[1] *See State ex rel. County Court of Marion County v. Demus,* 148 W.Va. 398, 401, 135 S.E.2d 352, 355 (1964). The Secretary of State is an official of the executive branch. W.Va. Const. art. VII, § 1. By granting the petitioner's request for a writ of mandamus, the majority has impliedly upheld the constitutionality of a clearly unconstitutional statute.

In addition, the majority has violated the separation of powers doctrine by usurping the authority of the legislature. The majority examined the list of permissible campaign expenditures in W.Va.Code § 3–8–9(a) (Supp.1985) and stated that two categories of expenditures from that list are more susceptible to abuse than the others. The majority targets as abuse areas the distribution of campaign literature, W.Va.Code § 3–8–9(a)(3), and the conveyance of voters to the polls, W.Va.Code § 3–8–9(a)(8). While abuse may exist in these areas, the record provides no evidence of it. In targeting these two areas for special treatment, the majority has impermissibly established legislative policy. This Court recently addressed the issue of judicial policy-making as follows:

This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic, or scientific merits of statutes pertaining to proper subjects of legislation. *It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation.*

*Boyd v. Commissioner,* No. 17061, slip op. at 4 (July 3, 1986) (emphasis added). If the legislature wished to target any specific areas of political campaign activities for special regulation, it would be their duty to do so. This Court has no authority to establish policy within the legislature's realm of power.

The majority also violates the separation of powers doctrine by, in essence, drafting legislation. They do this by establishing specific criteria for rates of remuneration for campaign workers and by requiring precise reports of services rendered by campaign workers. The majority states that workers should be paid no less than the statutory minimum wage,[2] but no more than the fifty dollar per day sum fixed by statute as the minimum payment for poll

---

1. The executive branch may make rules and regulations in order to carry out legislative policy under a constitutional delegation of authority from the legislature. "The delegation by the legislature of broad discretionary powers to an administrative body, accompanied by fitting standards for their exercise, is not of itself unconstitutional." Syl. pt. 5, *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969). I do not mean to imply otherwise. A delegation of legislative power to an administrative agency is a violation of the separation of powers doctrine only when such delegation is of a purely legislative power. *See* Syl. pt. 5, *Woodring v.*

*Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978). The United States Supreme Court recently reaffirmed its disapproval of the comingling of executive and legislative powers in *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). *Bowsher* concerned the constitutionality of the Balanced Budget and Emergency Deficit Control Act of 1985, Pub.L. 99–177, 99 Stat. 1038, popularly known as the "Gramm-Rudman-Hollings Act." The Supreme Court declared the Act unconstitutional because it created a congressional usurpation of executive branch powers. *Id.* 478 U.S. at 718–19, 106 S.Ct. at 3191–92.

2. W.Va.Code § 21–5C–2 (1985).

clerks and election commissioners.[3] They make one notable exception to this rule by stating that campaign workers who lose a day of work may be paid at their customary rate of compensation. Not only has the majority drafted legislation, they have even fashioned an exception to their legislation. This Court has no authority to do either. We recently noted that "[i]t is not the function of this Court ... to redraft acts of the legislature. That is a legislative function, which this Court is forbidden from exercising." *Starcher v. Crabtree,* 176 W.Va. at 709, 348 S.E.2d 293 at 295 (1986).

By placing the duty on the Secretary of State to promulgate rules for elections under W.Va.Code § 3–1A–6, the legislature has given him an incredible amount of power. The rules can be promulgated at the Secretary's whim because rules relating to public elections are not subject to the West Virginia Administrative Procedure Act. *See* W.Va.Code § 29A–1–3(c) (Supp.1985). The legislature will only be able to overrule the Secretary's actions by passing new legislation. Because West Virginia's Secretary of State is an elected official, it is not unlikely that each new Secretary of State will promulgate an entirely new set of rules. The rules may be manipulated in order to achieve political advantage. Almost seventy years ago, this Court stated that the delegation of power by the legislature cannot be sustained where "the exercise [of the power] is made to depend upon the mere will or caprice of the grantee of

the power." *Sutherland v. Miller,* 79 W.Va. 796, 803, 91 S.E. 993, 996 (1917). I believe the majority should be just as concerned about possible abuses of power by the Secretary of State as they are concerned about abuses in political campaigns.

This State should strive to insure that elections are free from corruption and fraud. Unfortunately, the majority of this Court has endorsed a system which may produce the same type of political manipulation and corruption it is supposed to prevent. The cancer of election fraud cannot be cured by placing almost absolute control over elections in the hands of one elected public official. I fear that under the white banner of election reform, the majority has created a powerful tool for corruption.

I firmly believe that W.Va.Code § 3–1A–6 is an unconstitutional delegation of legislative power to the executive branch of government and is therefore void. I would deny the writ sought by the petitioner on the ground that rules cannot be promulgated pursuant to an unconstitutional statute. Accordingly, I dissent.

I am authorized to state that Justice NEELY joins me in this dissent.

---

**3.** W.Va.Code § 3–1–44 (Supp.1985).