376 S.E.2d 304

**Freeman WILLIAMS**

v.

**Nelson B. ROBINSON, Jr., Commissioner, West Virginia Workers' Compensation Fund.**

No. 18440.

Supreme Court of Appeals of West Virginia.

Dec. 9, 1988.

James M. Robinson, Baer, Robinson & Colburn, Huntington, for appellant.

Mary Lou Newberger, Atty. Gens. Office, for appellee.

McHUGH, Chief Justice:

Petitioner, Freeman Williams, seeks a writ of mandamus ordering the Workers' Compensation Commissioner to increase his benefit payments for a previously ordered permanent total disability (PTD) award. The petitioner contends that the Commissioner's method of recalculating benefits based on the annually adjusted state average weekly wage violates the legislative intent of a statutory escalator clause, which the petitioner contends is to be applied favorably to all workers' compensation benefits recipients.

The petitioner was injured in 1977. In 1987, the Commissioner granted him a PTD award. The petitioner received his first check, totalling $70,569.98, for back benefits from 1977 through 1987.

The petitioner then wrote the Commissioner on two occasions and informed the Commissioner that his benefits were miscalculated. The Commissioner did not respond. The petitioner filed this writ of mandamus to compel the Commissioner to recalculate his benefits in a manner which

comports with the legislative intent of the pertinent statutes. The Commissioner responded that the statutes are clear and unambiguous and that he properly applied them when he calculated the petitioner's benefits.

The petitioner contends that based on legislative intent, he has a clear legal right to receive benefits calculated in a manner most beneficial to him; therefore, a writ should be issued requiring the Commissioner to adopt the petitioner's method of calculating PTD benefits. In order to follow the arguments by both parties it is necessary to review the statutes concerning the calculation of benefits and the manner in which the Commissioner has applied them.

Along with several other types of benefits, *W.Va.Code,* 23–4–6(d) [1986] requires that PTD benefits are calculated according to a statutory formula contained in *W.Va. Code,* 23–4–6(b) [1986]. The statutory formula of *Code,* 23–4–6(b) reads, in pertinent part:

> [T]he employee shall receive during the continuance thereof weekly benefits as follows: *A maximum weekly benefit* to be computed on the basis of *seventy percent of the average weekly earnings,* wherever earned, of the injured employee, at the date of injury, *not to exceed the percentage of the average weekly wage in West Virginia,* as follows: ...; on or after July one, one thousand nine hundred seventy-five, *one hundred percent.*
>
> *The minimum weekly benefits* paid hereunder shall not be less than ... for injuries occurring on or after July one, one thousand nine hundred seventy-six, *thirty-three and one-third percent of*

*the average weekly wage in West Virginia.*

(emphasis added).

In the formula, a person's average weekly wage remains a constant, it is determined "at the date of the injury." No such restriction appears in the formula for the state average weekly wage. According to *W.Va.Code,* 23–4–6(a) [1986], for purposes of the formula, the state average weekly wage is defined in *W.Va.Code,* 23–4–14 [1986].

*W.Va.Code,* 23–4–14 begins:

> The average weekly wage earnings, wherever earned, of the injured person at the date of injury, and the *average weekly wage in West Virginia* as determined by the commissioner of employment security, *in effect at the date of injury, shall be taken as the basis upon which to compute the benefits.*

(emphasis added).

However, *Code,* 23–4–14, then continues:

> The expression '*average weekly wage in West Virginia,*' within the meaning of this chapter, *shall be* the average weekly wage in West Virginia as *determined by* the *commissioner of employment security in accordance with the provisions of sections ten and eleven, article six, chapter twenty-one-A* of the Code of West Virginia, one thousand nine hundred thirty-one, as amended, and other applicable provisions of said chapter twenty-one A. [annual recalculation and publication of the state average weekly wage].[1]

(emphasis added).

Finally, 23–4–14 concludes with an escalator clause which is tied *solely* to the state average weekly wage:

---

1. *W.Va.Code,* 21A–6–10 [1988] contains a statutory formula for determining wage classes in West Virginia. The statute requires the Commissioner of Employment Security to annually construct a state average weekly wage table according to the formula. The Commissioner of Employment Security is then required to annually publish, by July 1, the new state average weekly wage.

The annually adjusted state average weekly wage table is then used by various state agencies to determine benefit rates for various programs. The Workers' Compensation Commissioner re-

ceives the adjusted table and annually reviews all awards subject to the formula contained in *W.Va.Code,* 23–4–6(b). In reviewing an award, the Commissioner compares 70% of the benefit recipient's previously determined average weekly wage with the new state average weekly wage, and determines, under the statutory formula, if the basis upon which the recipient's benefits are calculated has changed. Series I, Administration of the Workers' Compensation Fund, W.Va.C.F.R. 85–1–13.2 [1986].

At the same time, the Commissioner also annually readjusts the premium rate schedule for

any award for ... permanent total disability benefits ..., shall be paid at the weekly rates ... applicable to the claimant therein in effect on the date of such injury. *If during the life of such award for ... permanent total disability benefits ..., the weekly rates or the monthly amount ... are increased or decreased, the claimant shall receive such increased or decreased benefits beginning as of the effective date of said increase or decrease.*

(emphasis added).

When the definition of "state average weekly wage" contained in *W. Va. Code*, 23–4–14 is read in conjunction with the formula contained in 23–4–6(b), it is clear that the legislature intended that the Commissioner take into consideration, not merely the state average weekly wage in the year of the injury, but the annually adjusted state average weekly wage for the life of the award. As discussed later, the state average weekly wage has been steadily increasing due to inflationary pressures. Rather than specifying in the formula that the state average weekly wage on the date of the injury is the *sole* basis for the formula, the legislature has made the state average weekly wage a variable, which presumably will continue to steadily increase over time. In doing so, the legislature has made the formula in *Code*, 23–4–6(b) a sliding scale of benefit rates, which automatically adjusts the award of a recipient whose basis is tied to the state average weekly wage. The West Virginia legislature's adoption of

a sliding scale benefit formula is one of several methods that state legislatures have utilized to redress the detrimental effect of inflation on the wage-replacement purpose of workers' compensation.[2]

The issue before the Court is the manner in which the Commissioner has taken into consideration the annually adjusted state average weekly wage. The Commissioner reads *Code*, 23–4–14 as requiring an annual recalculation of benefits using the state average weekly wage for all succeeding years during the life of an award as the basis for the formula. *See* note 1, *supra*. It is this recalculation that the petitioner challenges.

The manner in which the Commissioner calculated the petitioner's benefits follows. First, in 1977, the year of the injury, the petitioner's average weekly wage was $330.60. For purposes of the formula contained in *Code*, 23–4–6(b), the Commissioner then determined that 70% of $330.60 is $231.42. From 1977, the year of the injury, until 1987, the year through which the petitioner's back benefits were paid, the Commissioner of Employment Security reported the following state average weekly wage rates:

FY 1977–$208.00
FY 1978–$224.00
FY 1979–$237.00
FY 1980–$262.00
FY 1981–N/A
FY 1982–N/A
FY 1983–$318.87

subscribing employers. Series I, *supra*, W.Va. C.F.R. 85–1–5 [1986].

**2.** In the 1970's, West Virginia, like most states, shifted from dollar amount ceilings to ceilings linked to the state average weekly wage—sliding scale benefits. Larson, *Workers' Compensation Law* § 60.43. This method of calculating benefits was first used in Connecticut in the rapid inflationary period of the 1970's. By using the annually adjusted state average weekly wage as the basis for benefits, awards keep pace with inflation, without the legislature constantly redrafting the compensation formula. Currently, the vast majority of states use a sliding scale maximum benefit formula, while a minority, including West Virginia, also links the minimum benefit schedule to the adjusted state average weekly wage. Larson, *Workers' Compensation*, Appendix B, Tables 8, 9, 10 and § 60.43–44.

Sliding scale benefits, escalator clauses, and flat cost-of-living adjustments evince legislative recognition of the detrimental effect of inflation on benefits, which are to serve as "a fair approximation of claimant's probable future earning capacity." Larson, *supra*, § 60.12. The West Virginia legislature has chosen both sliding scale benefits and an escalator clause (discussed *infra* ) as a means of adequately compensating claimants during inflationary periods. It has not chosen flat cost-of-living adjustments. *See, e.g., Va.Code*, § 65.1–99.1 [1986]. (All claimants whose compensation benefits and SSI benefits are less than 80% of their personal average weekly wage before disability are entitled to a percentage increase based on the Consumer Price Index).

FY 1984–$321.30
FY 1985–$332.83
FY 1986–$343.06
FY 1987–$350.83 [3]

Using the formula contained in *W.Va. Code*, 23–4–6(b), since 70% of the petitioner's average weekly wage, $231.42, exceeded 100% of the state average weekly wage for both fiscal years 1977 and 1978, he received benefits calculated upon a maximum benefit rate basis, 100% of the state average weekly wage for FY 1977 and FY 1978 ($208 and $224, respectively). However, in FY 1979, 70% of the petitioner's average weekly wage ($231.42) no longer exceeded 100% of the FY 1979 state average weekly wage ($237). Therefore, under the formula contained in *Code*, 23–4–6(b), the petitioner's benefits for FY 1979 were calculated upon a basis of 70% of his 1977 average weekly wage ($231.42). His benefits continued to be calculated upon this constant figure through FY 1987, since 70% of his average weekly wage remained below 100% of the state average weekly wage for the succeeding fiscal years.

Since 70% of the petitioner's average weekly wage will presumably no longer exceed 100% of the state average weekly wage, the petitioner will continue to receive benefits calculated upon a basis of $231.42 per week (rather than 100% of the state average weekly wage for any given year) unless, under *Code*, 23–4–6(b), in succeeding years, $231.42 falls below one-third of the state average weekly wage (or due to a sharp economic decline once again exceeds 100% of the state average weekly wage).

The petitioner contends that under the definition of "state average weekly wage" contained in *Code*, 23–4–14, the Commissioner has no right to recalculate his benefits pursuant to the fluctuating (presumably ever-increasing) state average weekly wage. Instead, the petitioner contends that in the year of the injury, 1977, 70% of his average weekly wage exceeded 100% of the state average weekly wage. Therefore, he should be entitled to benefits calculated upon 100% of the (presumably ever-increasing) state average weekly wage in *every* succeeding year for which he is entitled to benefits. This argument disregards the statutory formula contained in *Code*, 23–4–6(b) which does not require the Commissioner to use the state average weekly wage in the year of the injury as the *sole basis* for calculating benefits, and also disregards the last provision of *Code*, 23–4–14 which specifically calls for the annual increase *or decrease* of awards calculated according to the formula of *Code*, 23–4–6(b). Petitioner contends that the annual recalculation of benefits based on the current steadily increasing state average weekly wage defeats the legislative purpose of the statute. The petitioner points out that prior to the injury, his income exceeded the state average weekly wage; however, as a result of the injury, he is now receiving substantially less than the state average weekly wage. As such, petitioner contends, the manner in which the Commissioner is applying the statute defeats the wage-replacement element of workers' compensation.[4]

---

**3.** These figures were provided by the Workers' Compensation Commissioner. Figures for FY 1981 and 1982 were omitted. The reason for their omission is not apparent in the Commissioner's brief.

**4.** The petitioner contends that in 1977, the year of the injury, he was initially classified as a maximum benefits recipient, entitled to 100% of the state average weekly wage. He contends that the legislature intended to compensate him in a manner commensurate with his 1977 salary, 70% of which exceeded the 1977 state average weekly wage; therefore, the Commissioner must, from 1977 and each year thereafter, award the petitioner 100% of the steadily increasing state average weekly wage for each succeeding year. Given the remedial nature

and beneficent purpose of the statute, this interpretation, at first glance is appealing. Even if one were to ignore the language in *W.Va.Code*, 23–4–14, however, upon closer examination, this theory of locking into the state average weekly wage in the year of the injury is problematic.

For purposes of illustration, consider the following hypothetical. Three persons are rendered permanently and totally disabled in 1977: the petitioner, 70% of whose average weekly wage in 1977 is $231.42; claimant X, 70% of whose average weekly wage in 1977 is $325; and claimant Y, 70% of whose average weekly wage is $100.

Using the state average weekly wage chart for FY 1977 through 1987 provided above, the state average weekly wage for 1977 was $208. Under petitioner's theory, both he ($231.42) and claim-

"A threshold issue in any mandamus action is whether it is an appropriate vehicle for the relief sought." *Rogers v. Hechler,* 176 W.Va. 713, 716, 348 S.E.2d 299, 302. The existence of a clear legal right (and correlative legal duty) to entitlement is not readily ascertainable. Petitioner assumes the statutes are ambiguous and relies solely on the legislature's intent that compensation serve, in part, as a wage-replacement system. "The function of mandamus is not to establish rights, but to enforce rights that have been established." *Mandamus,* 52 Am.Jur.2d § 64.

Neither *Code,* 23–4–6(b) nor *Code,* 23–4–14 contains language which suggests that the Commissioner has a mandatory duty to use the comparison of 70% of a claimant's average weekly wage with the state average weekly wage *in the year of the injury* as the *sole* basis for determining a claimant's benefit rate. Syl. pts. 4 and 5, *Rogers, supra;* syl. pt. 2, *Terry v. Sencindiver,* 153 W.Va. 651, 171 S.E.2d 480 (1969);

syl. pt. 4, *Glover v. Simms,* 121 W.Va. 407, 3 S.E.2d 612 (1939).

■ *W.Va.Code,* 23–4–6(a), (b) and (d) [1986], and *W.Va.Code,* 23–4–14 [1986], when read in *pari materia,* require the Workers' Compensation Commissioner to recalculate permanent total disability benefits annually, based on the state average weekly wage.

■ The maximum award for claimants injured after July 1, 1975 is 70% of a claimant's personal average weekly wage, not to exceed 100% of the state average weekly wage, and the minimum award for claimants injured after July 1, 1976 is 33⅓% of the state average weekly wage. 23–4–6(b) [1986]. *Code,* 23–4–14 [1986] then defines the state average weekly wage as a figure that is annually adjusted. Significantly, *Code,* 23–4–14 concludes with the required annual review of "all awards," wherein benefits are "increased or decreased" from those "in effect on the date of the injury." This explicit statutory duty to increase *or*

ant X ($325) are entitled to the state average weekly wage as a basis for calculating their awards not only for the year of the injury, but *for the life of the award* because in 1977, 70% of both their wages exceeded the state average weekly wage for 1977. Under petitioner's theory, although X's earning capacity exceeded the petitioner's earning capacity by nearly $100 per week, the two would receive the same amount of compensation. This result defeats the wage-replacement element of compensation. Further, under petitioner's theory, claimant Y, 70% of whose average weekly wage is $100, would be entitled to benefits calculated upon $100 per week not only in the year of the injury *but* in *every succeeding year thereafter.* Under petitioner's theory, since $100 in 1977 was not less than one-third of the state average weekly wage in 1977 ($208), claimant Y would be locked into this amount. This not only defeats legislative intent but violates *Code,* 23–4–6(b), which under the sliding scale minimums, would entitle claimant Y to increased benefits in years where $100 fell below one-third of the state average weekly wage (FY 1983 through 1987).

Under the Commissioner's interpretation of the formula, using the same three claimants, the following results: petitioner, at $231.42 would receive benefits calculated upon the state average weekly wage through FY 1978, since 70% of his average weekly wage, $231.42, exceeded the minimum wage for FY 1977 ($208) and FY 1978 ($224). However, in FY 1979, the state average weekly wage ($237) exceeded $231.42. Therefore, he would receive benefits calculated upon $231.42 for 1979 and all subsequent years, until

$231.42 falls below one-third the state average weekly wage, at which point petitioner would be entitled to benefits calculated upon one-third the state average weekly wage.

Claimant X, at $325 would, like the petitioner, receive the state average weekly wage as his basis through FY 1978. However, since he earns $325, unlike the petitioner, he would continue to use the state average weekly wage as his basis until FY 1985, at which point the state average weekly wage became $332.83. From FY 1985 forward, claimant X would receive benefits calculated upon $325, until such time as $325 falls below one-third the state average weekly wage. At that point he would be entitled to benefits calculated upon one-third the state average weekly wage.

Claimant Y, at $100, would receive benefits calculated upon $100 in the year of the injury, because in 1977 the state average weekly wage was $208 and $100 is neither greater than $208 nor less than one-third of $208. Unlike petitioner's theory, however, claimant Y is not permanently locked into this figure. Claimant Y would remain with a $100 basis until FY 1983. In 1983, the state average weekly wage was $318.87. At this point $100 is less than one-third the state average weekly wage; therefore, the claimant's basis would be increased to $106.29 (one-third of $318.87). The basis for Y's award would be further adjusted upward in succeeding years as the state average weekly wage continued to rise.

*decrease* awards under the formula also clearly evinces the legislature's intent.

'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a clear legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

Syl. pt. 1, *Rogers v. Hechler*, 176 W.Va. 713, 348 S.E.2d 299 (1986).

■ This Court has previously applied and not construed statutes concerning the computation of Workers' Compensation benefits which are clear and unambiguous. *Jordan v. SWCC*, 165 W.Va. 199, 271 S.E.2d 604 (1980). We cannot conclude that the statute is ambiguous and that legislative intent creates a clear legal right in the petitioner to calculation of his annual benefits on the state average weekly wage in years that 70% of his personal average weekly wage do not exceed 100% of the state average weekly wage.[5]

Since *W.Va.Code*, 23–4–14 may be read as permitting the annual recalculation of benefit rates under *Code*, 23–4–6, the peti-

tioner has not established a clear legal right.

Writ denied.

**5.** While the petitioner has crafted his argument around the term "state average weekly wage," as used in the formula, at the crux of the case is the petitioner's dissatisfaction with the legislature's choice of adopting an escalator clause as opposed to a flat cost-of-living adjustment. *See* note 1, *supra.* The clause, as stated earlier, is unambiguously tied *solely* to the state average weekly wage and clearly indicates that not all claimants will benefit from the sliding scale as benefits may be "increased or decreased." Those claimants whose wages either exceed 100% of the state average weekly wage or are less than one-third of the state average weekly wage receive the benefit of the variable basis. Those recipients whose benefits are calculated on a personal average weekly wage basis do not. Challenges to either the arbitrary legislative selection of an inflationary adjustment mechanism or the arbitrary application of such a mechanism have arisen in other jurisdictions. Where the mechanism and overall formula are unambiguous, courts have upheld and applied the mechanism, without resort to legislative intent. *See Atchison v. May Dept. Stores Company*, 225 Va. 525, 304 S.E.2d 640 (1983); *Gusler v. Fairview Tubular Products*, 412 Mich. 270; 315 N.W.2d 388 (1986) and *Riley v. Northland Geri-* atric Center, 425 Mich. 668, 391 N.W.2d 331 (1986); *Krumm v. R.A. Nadeau Co., et al.*, 276 N.W.2d 641 (Minn.1979). *Cf. Seward Marine Services Inc. v. Anderson*, 643 P.2d 493 (Alaska 1982) (discussing a statute that contains two simultaneous escalator clauses, the court found one of the clauses to be ambiguous, used legislative intent, and determined that the purpose of the statute was to increase the ceiling on benefits). *Nelson v. Remor Restaurant, Inc.*, 228 Va. 607, 324 S.E.2d 658 (1985) (the court found that the ambiguous language contained in the annual flat cost of living adjustment evinced legislative intent to use the amount awarded in the prior year as the basis for computing the next year's adjustment, as opposed to the amount awarded in the initial year of the injury). *Director of Workers' Comp. v. Rasmussen*, 440 U.S. 29, 99 S.Ct. 903, 59 L.Ed.2d 122 (1979) (Justice Rehnquist, writing for a unanimous court held that an ambiguous section of the Longshoremen's and Harbor Workers' Compensation Act would allow dependents to receive benefits based on a sliding scale maximum due to legislative intent, and construction of liberalizing amendments which provided for the sliding scale maximum without clear restrictions).